### In re BOZARTH.

No. 26484.    Opinion Filed Dec. 15, 1936.

W. C. Alley, George Jennings, and L. O. Lytle, for petitioner.

Frank G. Anderson and V. P. Crowe, for the State Bar.

McNEILL, C. J. This is a disbarment proceeding.

Petitioner, on December 15, 1933, was convicted in the district court of Oklahoma county of a felony on the charge of obtaining property under false pretenses and was sentenced to pay a fine of $500. An appeal was thereafter perfected to the Criminal Court of Appeals, and that court, on October 12, 1934, affirmed the judgment rendered by the district court. Bozarth v. State, 56 Okla. Cr. 424, 41 P. (2d) 924. Thereafter, on November 24, 1934, there was filed by the Board of Governors of the State Bar an accusation against petitioner for disbarment by reason of said conviction. Petitioner responded and subsequently filed an amended response setting forth the fact that the Honorable E. W. Marland, Governor of the State of Oklahoma, on March 11, 1935, issued and granted to petitioner a full and free pardon of the offenses charged in said accusation.

Petitioner, at the hearing, introduced testimony of a number of outstanding members of the State Bar, each of whom testified in substance that petitioner's morality and general fitness as a practitioner of the law was good. It was stipulated in said hearing that a number of other witnesses, whose names were set forth, if called and sworn, would

testify that petitioner possessed a good general reputation, good moral character, and a general fitness as a practitioner of the law. The Board of Governors recommended to this court that petitioner be disbarred and that his name be stricken off the rolls of the members of the bar of this state.

We do not discuss the felony charge. We confine the opinion to the controlling question of whether the pardon issued by the Governor is a full and complete defense to this proceeding. Counsel for petitioner contends that such a pardon blots out of existence the guilt of petitioner in the eyes of the law as an offender so that he may be considered as innocent as if the offense had never been committed; and that the issuance of such a pardon automatically strips this court of the power and authority to revoke petitioner's license as an attorney at law.

Sir William Blackstone, in his Commentaries on the laws of England, vol. 3, chap. 3, p. 23, says:

"For the more speedy, universal, and impartial administration of justice between subject and subject, the law hath appointed a prodigious variety of courts, some with a more limited, others with a more extensive jurisdiction; some constituted to inquire only, others to hear and determine; some to determine in the first instance, others upon appeal and by way of review. * * *"

"* * * No man can practice as an attorney in any of those courts, but such as is admitted and sworn an attorney of that particular court. * * *"

"* * * So early as the statute 4 Hen. IV. c. 18. It was enacted, that attorneys should be examined by the judges, and none admitted but such as was virtuous, learned and sworn to duty. * * *"

"* * * For it is the peculiar business of the court of King's Bench, to superintend all other inferior tribunals, and therein to enforce the due exercise of those judicial or ministerial powers, with which the crown or Legislature have invested them; and this, not only by restraining their excesses, but also by quickening their negligence, and obviating their denial of justice. * * *"

In the case of In re Burr, 9 Wheat. 529, the Supreme Court of the United States considered the regularity of the proceedings of the circuit court for the District of Columbia in suspending Mr. Burr from practice for one year.

Mr. Chief Justice Marshall, in speaking for the court in reference to whether the circuit court had exceeded its powers in suspending Mr. Burr because he was put to answer charges not made on oath, said:

"The power is one which ought to be exercised with great caution, but which is, we think, incidental to all courts, and is necessary for the preservation of decorum, and for the respectability of the profession."

In the case of Ex parte Secombe, 19 How. 9, 15 L. Ed. 565, Mr. Justice Taney, in speaking for the Supreme Court of the United States, said:

"And it has been well settled, by the rules and practice of common-law courts, that it rests exclusively with the court to determine who is qualified to become one of its officers, as an attorney and counselor, and for what cause he ought to be removed. The power, however, is not an arbitrary and despotic one, to be exercised at the pleasure of the court, or from passion, prejudice, or personal hostility; but it is the duty of the court to exercise and regulate it by a sound and just judicial discretion, whereby the rights and independence of the bar may be as scrupulously guarded and maintained by the court, as the rights and dignity of the court itself. * * *

"Indeed, it is difficult, if not impossible, to enumerate and define, with legal precision, every offense for which an attorney or counselor ought to be removed. And the Legislature, for the most part, can only prescribe general rules and principles to be carried into execution by the court with judicial discretion and justice, as cases may arise."

In the case of Selling v. Radford, 243 U. S. 46, 37 S. Ct. 377, 61 Law Ed. 585, the Supreme Court of the United States considered a petition to disbar a member of the bar of that court upon the ground of his previous disbarment by a state court for personal and professional conduct. Mr. Chief Justice White, in discussing the question of the prerequisites to admission to the bar of that court, said:

"Beyond all question, when admission to the bar of this court is secured, that right may not be taken away except by the action of this court. * * *

"While, moreover, it is true that the two conditions—membership of the bar of the court of last resort of a state and fair private and professional character—are prerequisites to admission here, there is a wide difference in the nature and effect of the two requirements. This follows, because the first, although a prerequisite to admission here, is ephemeral in its operation, since its effect is exhausted upon admission to this bar which it has served to secure,—a result which becomes manifest by the consideration that although the membership of the bar of the court of last resort of a state, after admission here, might be lost by change of domicile from one state to another, if so provided

by the state law or rule of court, or by any other cause not involving unworthiness, such loss would be wholly negligible upon the right to continue to be a member of the bar of this court. The second exaction, on the contrary, is not ephemeral, and its influence is not exhausted when the admission based upon it is secured, since the continued possession of a fair private and professional character is essential to the right to be a member of this bar. It follows, therefore, that the personality of the member and these inherent and prerequisite qualifications for membership of this bar are indivisible; that is, inseparable. They must, if they exist, follow the personality of one who is a member of the bar, and hence their loss by wrongful personal and professional conduct, wherever committed, operates everywhere, and must, in the nature of things, furnish adequate reason in every jurisdiction for taking away the right to continue to be a member of the bar in good standing."

The admission of an attorney to the practice of law is a judicial function and it is of necessity within the inherent power of the court for the reason of self-protection and respectability of the profession. It is a time-honored privilege to become an officer of the court as an attorney and counselor, and the same power which grants the privilege also withdraws the same when the attorney has been found to be unworthy.

It may be conceded that the legislative branch of the government may make reasonable regulation governing the admission and disbarment of attorneys in aid of the court's powers, but the ultimate power of admission or disbarment is inherently within the exercise of judicial function. In the October issue of the Florida Law Journal appears an interesting article on the power of admission of an attorney at law as being inherently in the judiciary. The authorities cited are as follows: Ex parte Garland, 4 Wall. 333, 18 L. Ed. 366; Wernimont v. State, 101 Ark. 210, 142 S. W. 194; In re Chapelle, 71 Cal. App. 129, 131-132, 234 P. 906; Brydonjack v. State Bar, 208 Cal. 439, 443, 281 P. 1018; 66 A. L. R. 1507; In re Lavine, 2 Cal. (2d) 324, 327, 41 P. (2d) 161; People v. Irwin, 100 Colo. 177, 152 P. 905; O'Brien's Petition, 79 Conn. 46, 63 Atl. 777; Rosenthal v. State Bar Examining Committee, 116 Conn. 409, 415, 165 Atl. 211; In re Day, 181 Ill. 73, 54 N. E. 646, 50 L. R. A. 519; People ex rel. Il'inois State Bar Association v. People's Stock Yards State Bank, 344 Ill. 462, 176 N. E. 901; In re Leach, 134 Ind. 665, 34 N. E. 641; Hanson v. Grattan, 84 Kan. 843, 115 P. 646; In re Casebier, 129 Kan. 853, 284 P. 611; Ex parte Steckler, 179 La. 419, 154 So. 41; Opinion of the Justices to the Senate, 279 Mass. 607, 180 N. E. 725, 81 A. L. R. 1059; In re Bonam, 255 Mich. 59, 237 N. W. 45; In re Greathouse, 189 Minn. 51, 248 N. W. 735; In re Richards, 333 Mo. 907, 63 S. W. (2d) 672; In re Blanch, 70 N. J. L. 537, 57 Atl. 431; In re Eaton, 60 N. D. 580, 235 N. W. 587; Williams v. Sullivan, 35 Okla. 745, 131 P. 703; In re Crum, 103 Ore. 296, 204 P. 948; Splane's Petition, 123 Pa. 527, 16 Atl. 481; In re Olmsted, 292 Pa. 96, 140 Atl. 634; Rhode Island Bar Association v. Automobile Service Ass'n (R. I.) 179 Atl. 139; Danforth v. Eagan, 23 S. D. 43, 119 N. W. 1021; Burns v. State (Tex. Civ. App.) 76 S. W. (2d) 172; In re Platz, 42 Utah, 439, 472, 72 P. 390; In re Bruen, 102 Wash. 472, 72 P. 1152; In re Application for License to Practice Law, 67 W. Va. 213, 67 S. E. 597; State v. Cannon, 206 Wis. 374, 240 N. W. 441; State Board of Law Examiners v. Phelan, 43 Wyo. 481, 5 P. (2d) 263.

Mr. Justice Cardozo in the Matter of Jacob Rouse, an Attorney, 221 N. Y. 81, on page 84, 116 N. E. 782, 783, said:

"Membership in the bar is a privilege burdened with conditions. A fair private and professional character is one of them. Compliance with that condition is essential at the moment of admission; but it is equally essential afterwards. Selling v. Radford, 243 U. S. 46, 37 Sup. Ct. 377, 61 L. Ed. 585; Matter of Durant, 80 Conn. 140, 147, 67 Atl. 497, 10 Ann. Cas. 539. Whenever the condition is broken the privilege is lost. To refuse admission to an unworthy applicant is not to punish him for past offenses. The examination into character, like the examination into learning, is merely a test of fitness. To strike the unworthy lawyer from the roll is not to add to the pains and penalties of crime. The examination into character is renewed; and the test of fitness is no longer satisfied. For these reasons courts have repeatedly said that disbarment is not punishment. Ex parte Wall, 107 U. S. 265, 2 Sup. Ct. 569, 27 L. Ed. 552; Matter of Randall, 11 Allen (Mass.) 473, 480; Matter of Randel, 158 N. Y. 216, 52 N. E. 1106; Boston Bar Ass'n v. Casey, 211 Mass. 187, 192, 97 N. E. 751, 39 L. R. A. (N. S.) 116, Ann. Cas. 1913A, 1226; Matter of Durant, supra.

" 'The question is,' said Lord Mansfield, 'whether, after the conduct of this man, it is proper that he should continue a member of a profession which should stand free from all suspicion.' Ex parte Brounshell, Cowp. 829.

" 'It is not,' he continued, 'by way of punishment; but the court, on such cases, exercise their discretion whether a man whom they have formerly admitted is a proper person to be continued on the roll or not.'

"This ruling was announced after consultation with all judges, 'as it is for the dig-

nity of the profession that a solemn opinion should be given.' On that high plane the jurisdiction was thus early placed, and in that high spirit it has been exercised. **Even pardon will not elude it.** Pardon ·blots out the offense and all its penalties, forfeitures, and sentences; but the power to disbar remains. Matter of [—] an Attorney, 86 N. Y. 563. We do not need to inquire now whether the power is so essential and inherent that the Legislature may not take it away. State ex rel. Wood v. Raynolds (N. M.) 158 P. 413, and cases there cited. At least, we will not hold it to have been taken away by words of doubtful meaning." (Emphasis ours.)

All members of the bar are officers of the court, and the court must control and assume authority over its officers in the effective administration of justice. The effect of a pardon operates to relieve petitioner of the penal consequences of his act and is no bar to a disbarment proceeding involved in the commission of a felony.

The issuance of the pardon in question pending a determination of the disbarment proceeding can place no limitation upon the inherent power of the court to determine who shall become officers of this court and who shall remain as such. It rests exclusively with this court to pass upon the ultimate fitness of those who may enjoy the privilege of continuing the practice of the profession of law, and the issuance of an executive pardon cannot encroach upon the court's inherent power over attorneys at law in reference to admission or removal. There is no distinction between the power to admit and the power to remove. Re Opinion of the Justices, 279 Mass. 607, 180 N. E. 725, 81 A. L. R. 1062.

In the case of In re Davies, 39 Am. Rep. 729, the Supreme Court of Pennsylvania said:

"The power of a court to admit as an attorney to its bar a person possessing the requisite qualifications, and to remove him therefrom when found unworthy, has been recognized for ages and cannot now be questioned. In fact, the power of removal for just cause is as necessary as that of admission for a due administration of law. By admitting him the court presents him to the public as worthy of its confidence in all his professional duties and relations. If afterward it comes to the knowledge of the court that he has become unworthy. it is its duty to withdraw that indorsement and thereby cease to hold him out to the public as worthy of professional employment. * * *"

In the light of these principles of law announced in the foregoing opinions, we must conclude that the conviction of respondent is tantamount to the absence of fair private and professional character.

Respondent has tendered for our consideration the testimony of outstanding members of the bar who have expressed confidence in the integrity of respondent. These are weighty testimonials in his favor. However, such testimony, generously given, is not sufficient to counteract the facts which are not in dispute. Disbarment is not essentially perpetual and the question of rehabilitation is not before us.

We conclude that the issuance of a pardon cannot trench upon the inherent power of the court to disbar an attorney from the privilege of practicing law to the end that the well-being of government, the public, the bar and the courts may be well served. To hold otherwise, in the proper administration of justice the power of the court would be rendered nugatory to control admissions to the bar, and the court would be denied the power to exclude for adequate reason a member of the bar who was not in good standing.

The recommendation of the Board of Governors is approved and the name of respondent is stricken off the rolls of the attorneys.

OSBORN, V. C. J., and BAYLESS, BUSBY, PHELPS, and CORN, JJ., concur. GIBSON, J., not participating, RILEY and WELCH, JJ., absent.