Henry FORD, County Assessor of Oklahoma County, Oklahoma, and Albert Dyer, County Treasurer of Oklahoma County, Oklahoma, Plaintiffs in Error,

v.

The BOARD OF TAX-ROLL CORRECTIONS OF OKLAHOMA COUNTY, Oklahoma, Oklahoma Bar Foundation, Inc., a corporation, and The Oklahoma Bar Association, Defendants in Error.

No. 41500.

Supreme Court of Oklahoma.

April 11, 1967.

Rehearing Denied May 23, 1967.

Curtis P. Harris, County Atty., Granville Scanland, Asst. County Atty. of Oklahoma County, Oklahoma City, for plaintiffs in error.

Maurice H. Merrill, Norman, Russell V. Johnson, Oklahoma City, Leo H. Whinery, Norman, Thomas C. Smith, Jr., Oklahoma City, for defendants in error.

DAVISON, Justice.

This is an appeal by Henry Ford, County Assessor of Oklahoma County, and Albert Dyer, County Treasurer of Oklahoma County, from a judgment of the lower court adjudging that an order of the Board of Tax-Roll Corrections of Oklahoma County was correct and in accordance with law, when said Board found and ordered that certain real estate was exempt from ad valorem taxation. We will refer to the appealing parties as "Appellants," the Oklahoma Bar Association as "Association," the Oklahoma Bar Foundation, Inc., as "Foundation," and the Board of Tax-Roll Corrections as "Board."

This controversy was initiated when the Foundation and Association filed an application with the Board in which they alleged the exempt character of the property and that it had been listed as such on the records of the Appellants for the years 1960, 1961 and 1962, but that the property and improvements thereon had been assessed and taxed for the year 1963, and prayed that the Board restore the exempt status of the property and direct the Appellants to correct their records to that effect. The Board made numerous findings of evidentiary facts (herein later narrated) regarding the creation of the Association and the Foundation corporation from which the Board concluded that the Association was an agency and instrumentality of the State of Oklahoma under the exclusive supervision, direction and control of the Oklahoma Supreme Court; that the Foundation has since its incorporation under the laws of the State of Oklahoma on May 9, 1949, been a non-profit corporation for educational, charitable and scientific purposes, and has operated in the public interest and for the advancement of the administration of justice; that the Foundation holds title to the real property and the building and improvements thereon and the fixtures and furnishings therein (occupied and used by the Association) in trust for the Association and the State of Oklahoma under the exclusive direction and control of the Oklahoma Supreme Court; and that said real property, building and improvements, fixtures and furnishings, were exempt from taxation under and within the meaning of Art. 10, § 6, of the Oklahoma Constitution.

Article 10, § 6, of the Oklahoma Constitution provides in part as follows:

"All property used for free libraries, free museums, public cemeteries, property used exclusively for schools, colleges, and all property used exclusively for religious and charitable purposes, and *all property* of the United States, and *of this State,* and of counties and of municipalities of this State; * * * *shall be exempt from taxation:* * * *." (Emphasis ours.)

We will make disposition of the matters presented in this appeal by determining whether or not the described property is property of this State and therefore exempt from taxation.

The Appellants contend that the property is not the property of the State.

A factual statement of prior laws and events is necessary for a full understanding of the circumstances from which the present controversy arose and for application of the law decisive of the above proposition. In 1929 the Legislature enacted an Act, known as The State Bar Act (Chap. 22, Art. 2, § 4210 et seq., O.S.1931) establishing a State Bar, creating a Board of Governors, and providing for qualifications for admission to the Bar, rules of professional conduct, and causes and procedure for disbarment. In 1939 the Legislature repealed the

State Bar Act (Chap. 22, Art. 1, §§ 1 to 6, S.L.1939, now appearing in part as 5 O.S. 1961, §§ 12 to 16), effective July 28, 1939.

On May 25, 1939, there was filed in this court a petition by the Board of Governors and by attorneys of this State praying that the Bar be integrated by order of the Supreme Court. Pursuant to the petition this court in In re Integration of State Bar of Oklahoma, 185 Okl. 505, 95 P.2d 113, held that the right to define and regulate the practice of law was inherent in the judicial department and belonged to the Supreme Court and that it had power and did promulgate:

> "Rules Creating, Controlling and
> Regulating the Oklahoma
> State Bar Association

"In public interest, and for advancement of the administration of justice, there is hereby created an association of the members of the bar of the State of Oklahoma.

### Article 1.

"The name of the organization shall be Oklahoma Bar Association."

In all, the decision of this court promulgated Rules consisting of 15 Articles, with subdivisions, providing inter alia for, annual meetings of the association; designating those persons who on and after July 28, 1939, were licensed and entitled to practice law as constituting the membership of the association, and limiting the practice of law to active members; fixing annual dues and requiring payment of dues by active members as a condition to the privilege of practicing law; creating an Executive Council and providing causes and procedure for disbarment of members on order of this Court; providing for publication of the Bar Journal; appointing a Board of Bar Examiners; adopting canons of ethics; providing for administrative employees; and retaining in the Supreme Court the power to amend such rules. These rules were revised and amended by the Supreme Court with the passage of years to meet the requirements of the Court and the needs of the Association,

but are in principle substantially as promulgated.

In May, 1949, the Foundation was incorporated and formed by a group of members of the Association "for educational, charitable, and scientific purposes exclusively," and for the purposes, inter alia, "to advance the science of jurisprudence and promote the administration of justice and the uniformity of judicial decisions exclusively through educational and scientific means of research; to assist the Oklahoma Bar Association, its successors and assigns, in carrying out such purposes; * * *." The by-laws provide that the membership of the corporation shall be composed of all members of the Association in good standing.

On February 15, 1955, the Association and Foundation made application to the Supreme Court alleging that the Association operates under the orders and directions of this Court and praying for permission to the Association and Foundation to expend funds on hand to buy property as a site for a contemplated building for headquarters of the Association, and that this Court retain jurisdiction of the matter pending submission of their specific plans for building and financing the contemplated building. On January 16, 1959, in response to further application, this Court ordered and directed the Association to draw from its treasury $40,000.00, which had been accumulated and earmarked for building fund purposes, and pay the same to the Foundation for use exclusively toward acquiring a site, employment of architects, and other necessary preliminary expenses, and the building and construction of a Headquarters Building for the Association. In July, 1959, the Foundation applied to this Court for permission to buy, for $20,000.00, the subject tract of land for the site of the erection of a building for the use and benefit of the Association and for the promulgation of the objects and purposes of the Foundation, and on July 17, 1959, this Court gave its approval. Title was taken by the Foundation on November 17, 1959.

Thereafter the Foundation acquired and accumulated funds by donation and pledge from attorneys, families and relatives of deceased lawyers, and other parties whereby the building was constructed. The Association took possession in July, 1962, and occupies and uses the entire property and building.

Under the orders of the Supreme Court, as originally promulgated (supra) and revised and amended, the Association has 41 main Committees, 32 Grievance Committees, and numerous other Committees and Sections, engaged in studies, research, and hearings for the purpose of the advancement of the administration of justice, continuing legal education and related subjects. The membership of this Association consists of more than 4800 attorneys in an active status, and the Judges of the Supreme Court, Court of Criminal Appeals, District Courts, County Courts, and other courts of the State created by the Legislature are members of the Association. The property and building is used for administration of the affairs of the Association, meetings of committees, and by the Board of Bar Examiners in giving bar examinations.

The record reflects that the United States Internal Revenue Service recognizes the Foundation as being exempt from Federal income tax. It was further shown that the financial accounts of the Association are subjected, without charge, to an annual audit of the Oklahoma State Examiner and Inspector.

■ At this point in this decision we conclude and hold that the evidence clearly shows that the Foundation holds the title to the property in trust for the Association. In this respect the finding of the Board (affirmed by the lower court) is sustained by the evidence. In fact the Appellants do not appear to contend otherwise. This clears the way for a determination of whether under the applicable law the subject property is property of the State and exempt from taxation under Const., Art. 10, § 6, supra.

Article 4, § 1, of the Oklahoma Constitution provides:

"The *powers of the government* of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and *except as provided in this Constitution*, the Legislative, Executive and Judicial departments of government shall be *separate and distinct*, and neither shall exercise the powers *properly* belonging to either of the others." (Emphasis ours.)

Article 7, § 1, of the Constitution provides:

"The judicial power of this State shall be vested in the Senate, sitting as a court of impeachment, a Supreme Court, District Courts, County Courts, Courts of Justices of the Peace, Municipal Courts, and such other courts, commissions or boards, inferior to the Supreme Court, as may be established by law."

The above quoted sections furnish no specific definition of what is contained or embodied in the power vested in each of the three equal and co-ordinate departments of the government. There is the declaration that neither shall exercise the powers *properly* belonging to either of the others.

In State Bar of Oklahoma v. McGhee, 148 Okl. 219, 298 P. 580 (1931), it was urged that § 26 of the State Bar Act of 1929, supra, giving to the Board of Governors the power to disbar attorneys, was unconstitutional because it infringed upon the inherent powers of the judicial branch of the government. Therein we quoted definitions of the word "properly" to mean "Suitable; fitly; strictly; rightly; correctly;" and of the word "proper" to mean "peculiar; naturally or essentially belonging to a person or thing; not common; appropriate; one's own." We then stated:

"We are not at liberty, in construing a constitutional provision, to disregard its language. The presumption is that the makers of the Constitution meant something when they put in the qualifying word 'properly' before the word 'belong-

ing,' and it. means more than if the general language had been used prohibiting one department from exercising the powers. belonging .to either of the other departments. The makers of the Constitution recognized the difficulty in separating by hard and fast rule, the functions of the three branches of government." (Emphasis ours.)

and as follows:

"It. is not necessary to decide as to whether or not, under the implied power of this court, *which must exist for its very existence*, it can prescribe rules and regulations that would be different from those prescribed by the Legislative branch of the government, as the Legislature, in passing the Bar Act, *was merely aiding this court in its efforts to secure. purity in the practices of those who appear before it.*" (Emphasis ours.)

and also as follows:

"As evidence of the fact that the Legislature was endeavoring to aid this court in a most laudable manner, that is, to prevent dishonest practice being carried on by those claiming to be its officers, the Legislature has expressly stated in this section: 'The powers herein conferred are in addition to the powers to disbar or discipline members of the bar as now held and exercised by the Courts.'"

In the McGhee case this Court recognized the existence and possession of inherent powers in the judicial department which must exist for its existence.

■ When, in 1939, the Legislature repealed, supra, the State Bar Act, this court was faced with the need to exercise its inherent powers as head of the judicial department to organize and integrate the State Bar. In In re Integration of State Bar of Oklahoma (185 Okl. 505, 95 P.2d 113), supra, we did this. We stated that there is no express grant of power in the Constitution of Oklahoma giving to any of the three departments of government the right to define and regulate the practice of law, and that:

"* * * the very fact that the Supreme Court was created by the Constitution gives it the right to regulate the matter of who shall be admitted to practice law before the Supreme Court and inferior courts, *and also gives it the right to regulate and control the practice of law within its jurisdiction.*" (Emphasis supplied.)

We further quoted with approval from In re Integration of Nebraska State Bar Association, 133 Neb. 283, 275 N.W. 265, 114 A.L.R. 151, as follows:

" 'The claim of inherent judicial power is no novelty. There are many cases in which it has been invoked over the membership of the bar. It has been invoked in the admission, suspension, discipline and disbarment of attorneys and in these no legislative permission is considered requisite, and, *if a statute exists, it is regarded as declaratory of the inherent power of the judiciary and not exclusive in its provisions. The term "inherent power of the judiciary" means that which is essential to the existence, dignity and functions of the court from the very fact that it is a court.* (Emphasis ours.)

\* \* \* \* \* \*

" 'The primary duty of courts is the proper and efficient administration of justice. Attorneys are officers of the court and the authorities holding them to be such are legion. *They are in effect an important part of the judicial system of this state.* It is their duty honestly and ably to aid the courts in securing an efficient administration of justice. The practice of law is so ultimately connected and bound up with the exercise of judicial power in the administration of justice that the right to define and regulate its practice naturally and logically belongs to the judicial department of our state government.' " (Emphasis ours.)

■ In In re Bledsoe, 186 Okl. 264, 97 P.2d 556 (1939) this court was presented with an application for admission to the Bar without necessity of a written exam-

ination. The applicant relied upon Sec. 4, Art. 1, Chapter 22, Session Laws 1939 (supra), 5 Okl.St.Ann. § 15, (5 O.S.1961, § 15, "Unconstitutional"), providing any graduate of a Grade A law school (therein defined) should be admitted to practice law without examination. Our decision held Section 4 was unconstitutional. The decision relies upon In re Integration of the State Bar of Oklahoma, supra, and other authorities, that it was within the inherent power of the judicial department to determine the qualifications of persons who may be permitted to practice law. We stated:

"* * * The Legislature is not without authority to prescribe qualifications for admission to the practice of law. Neither is such authority without limitation. The bounds of such authority are well stated in the case of Opinion of the Justices, 279 Mass. 607, 180 N.E. 725, 727, 81 A.L.R. 1059, wherein it was said: 'Numerous statutes have been passed making provision in aid of the judicial department in reaching a proper selection of those qualified for admission as attorneys to practice in the courts. It is not necessary to review them in detail. Like many other statutes, they have been enacted to enable the courts to perform their duties. They have been enacted, also, in the exercise of the police power to protect the public from those lacking in ability, falling short in learning, or deficient in moral qualities, and thus incapable of maintaining the high standard of conduct justly to be expected of members of the bar. No statute can control the judicial department in the performance of its duty to decide who shall enjoy the privilege of practising (sic) law. Statutes hitherto enacted have been followed as the basis of its action. No contentions have arisen in the courts concerning their validity. Statutes respecting admissions to the bar, which afford appropriate instrumentalities for the ascertainment of qualifications of applicants, are no encroachment on the judicial department. * * * ' "

Therein we quoted from In re Day, 181 Ill. 73, 54 N.E. 646, 50 L.R.A. 519, as follows:

" '* * * The fact that the legislature may prescribe the qualifications of doctors, plumbers, horseshoers, and persons following other professions or callings, *not connected with the judicial system,* and may say what shall be evidence of such qualifications, *can have no influence on this question.* A license to such persons *confers no right to put the judicial power in motion or to participate in judicial proceedings. The attorney is a necessary part of the judicial system,* and his vocation is not merely to find persons who are willing to have lawsuits. He is the first one to sit in judgment on every case, *and whether the court shall be called upon to act depends on his decision. * * * '* " (Emphasis ours.)

We also quoted from 66 A.L.R. 1512, as follows:

" 'It is generally conceded that the legislature may, in the exercise of its police power, prescribe rules and regulations for admission to the bar which the courts will follow; but such rules and regulations must not be unreasonable or deprive the courts of their inherent power to prescribe other rules and conditions of admission to practice.' "

See also In re Bozarth, 178 Okl. 427, 63 P.2d 726, 728.

From the above decisions it is clear that as to the respective positions of the Legislature and of the Supreme Court under the Constitution, in respect to regulating and controlling the Bar, the legislative power may enact statutes respecting the proper administration of justice and the organization of the Bar, so long as they are helpful to those ends. However, the responsibility for the due administration of justice and the regulation and control of the Bar is vested in the Supreme Court by Art. 7, § 1, of the Constitution, and is protected against encroachment by Art. 4, § 1, of the Constitution. It is also clear that the power to organize, regulate and control the Bar for

the administration of justice is inherently vested in the Supreme Court and, in case of invasion upon this power, the Court's power is superior under the Constitution.

These conclusions are not limited to the State of Oklahoma. This is shown not only by the authorities cited in the above decisions, but by decisions from other States. In Wisconsin the Supreme Court was called upon to render a number of decisions with regard to whether integration of the Bar was a Legislative act or a Judicial function. The Wisconsin Legislature had passed a statute integrating the Bar and conferring on the Supreme Court power to provide for organization of the association. In In re Integration of Bar Case, 244 Wis. 8, 11 N.W.2d 604, 151 A.L.R. 586 (1943) the court reviewed and cited many cases. The court held that it would not integrate the Bar, stating, "In due course the matter may be brought to the attention of the court or the court upon its own motion may proceed as it may then be advised." The conclusion of the court (11 N.W.2d, p. 619), is as follows:

"It has been held by every court to which the question has been presented that the court has power to integrate the Bar and that the integration of the Bar is a judicial and not a legislative function. (Citing cases.)"

See, In re Integration of the Bar, 249 Wis. 523, 25 N.W.2d 500, in which the court again postponed integration of the Bar. In connection with its determination that the court could require members to pay dues, the decision states:

" * * * In other words, the court by reason of its inherent or implied powers may, if it thinks the exigencies call for it, require the bar to act as a unit, to promote high standards of practice and the economical and speedy enforcement of legal rights and to implement this may require the bar to make such contributions in money to the joint effort as is deemed necessary and proper. *No matter what these fees be called, they are moneys required to be paid into the treasury of the*

*bar for a public purpose connected with the administration of justice. * * "* (Emphasis supplied.)

On the basis of its prior decisions, supra, the Supreme Court of Wisconsin integrated the Bar in In re Integration of the Bar, 273 Wis. 281, 77 N.W.2d 602 (1956).

Thereafter, in Lathrop v. Donohue, 10 Wis.2d 230, 102 N.W.2d 404, Lathrop (an attorney) contended the requirement that he pay dues to the integrated Bar constituted a violation of his constitutional rights. The court overruled this contention and in connection therewith stated:

"Mr. Chief Justice Rosenberry declared in the Integration of Bar Case (1943), supra, that the dues payable by a lawyer to an integrated bar imposed by state action are in the same category as an annual license fee imposed upon any occupation or profession which is subject to state regulation. This is also the holding of the Florida and Louisiana courts in Petition of Florida State Bar Association, Fla.1949, 40 So.2d 902, and In re Mundy, 1942, 202 La. 41, 11 So.2d 398. The fact that a license fee exacted by the courts is not deposited in the public treasury but is disbursed by the court created agency to which paid, does not militate against the validity of such license fee. Laughlin v. Clephane, D.C. D.C.1947, 77 F.Supp. 103.

\* \* \* \* \* \*

"While the police power is generally considered an exclusive power of the legislature, it may be exercised by courts. Petition of Florida State Bar Association, supra. In such cited case the court held that its exercise of inherent power to integrate the Florida bar constituted an exercise of the police power. We deem that the same is true of the 1956 and 1958 orders of this court integrating the bar of this state, and continuing the same, in order to improve the administration of justice. \* \* \*

\* \* \* \* \* \*

"Furthermore, the State Bar is a public and not a private agency. In the annota-

tion entitled, 'State bar created by act of legislature or rules of court; integrated bar,' 114 A.L.R. 161, the author states:

'While the statutes or court rules under which they have been organized differ to some extent, integrated bars have the common characteristics of being organized by the state or under the direction of the state, and of being under its direct control, and in effect they are governmental bodies.'

"State Bar of California v. Superior Court, 1929, 207 Cal. 323, 278 P. 432, 434, and In re Gibson, 1931, 35 N.M. 550, 4 P. 2d 643, 653, support the above-quoted statement."

In the Donohue Case it appears that the legislature had created the "Judicial Council" to recommend to it "changes in the organization, jurisdiction, operation and methods of conducting the business of the courts." The Council's activities were financed by legislative appropriation of state tax revenues. The decision states:

"* * * The State Bar is a public agency the same as the Judicial Council. One has been created by the court and the other by the legislature but each was created by state action as a state agency to serve a public purpose."

On appeal to the United States Supreme Court, Lathrop v. Donohue, 367 U.S. 820, 81 S.Ct. 1826, 6 L.Ed.2d 1191, the court affirmed but could not agree upon an opinion on all propositions presented. The majority of the court agreed that it was constitutional to condition the right to practice law upon membership in an integrated bar association.

 It is our conclusion that, this Court's action in integrating the State Bar was an exercise of the police power vested in this court; that the dues or fees paid by the members into the treasury of the Association are for a public purpose connected with the administration of justice; and that when the Association was created by the Supreme Court this constituted creation by State action of a State agency to serve a public purpose. It is our further conclusion that the subject property is owned and used by the Association under the supervision and control of the Supreme Court for public purposes connected with the administration of justice, for the sole use and benefit of the State of Oklahoma.

In State Bar of Michigan v. City of Lansing, 361 Mich. 185, 105 N.W.2d 131 (1960), it was contended that the real and personal property of the State Bar was exempt from taxation. The decision reflects that the property was acquired by the Bar by use of funds raised in much the same manner as was employed in Oklahoma. The Michigan Bar was integrated by an act of the legislature and the supreme court was authorized to provide for the organization and regulation of the Bar. The supreme court did this. The decision recognized the inherent power of the court to regulate the qualifications of persons who may be permitted to practice law. The court then quoted extensively from Lathrop v. Donohue (102 N.W.2d 404, 406), supra, as authority that the State Bar was a public and not a private agency, including specifically the portion stating that regardless of whether organization was by statute or court rules, the integration was by the State or under direction of the State and they were governmental bodies. The decision held the property was public property belonging to the State of Michigan and was exempt from taxation.

The subject property is used exclusively for the use and benefit of the State and under the existing circumstances should be exempt from taxation.

It is our conclusion that under the law and authorities herein set forth the subject property is exempt from taxation.

Affirmed.

All the Justices concur.