Question Submitted by: Chairman Robert H. Gilliland, Workers' Compensation Commission
2015 OK AG 8
Decided: 09/23/2015
Oklahoma Attorney General Opinions

Cite as: 2015 OK AG 8, __ __

 

¶0 This office has received your request for an official Attorney General 
Opinion in which you ask, in effect, the following question:
The Oklahoma 
Workers' Compensation Commission is composed of three Commissioners who, under 
various provisions of Title 85A of the Oklahoma Statutes, act as an appellate 
tribunal in appeals from decisions of Administrative Law Judges, Petitions for 
Review in adverse benefits decisions made by appeal committees of employers' 
benefit plans, and arbitration awards made under the arbitration provisions of 
Title 85A. When acting as an en banc appellate tribunal considering 
such cases, does the deliberative process privilege permit the Commissioners to 
hold confidential deliberations?
Background
¶1 Your question was previously asked in conjunction with a prior request 
regarding whether the Commission was permitted under the Oklahoma Open Meeting 
Act to deliberate privately in such cases. This office, in Attorney General 
Opinion 2014-14, opined that 1) because the individual proceedings considered by 
the Workers' Compensation Commission, when acting as an en banc appellate 
tribunal, were not individual proceedings under the Administrative 
Procedures Act, and 2) because the provisions of the Oklahoma Open Meeting Act 
allowing deliberation in executive session applied only to individual 
proceedings under the Administrative Procedures Act, the Oklahoma Open Meeting 
Act did not authorize the Commission to deliberate in executive 
session. We also concluded that no other statute authorized the Commission to 
hold confidential deliberations.
¶2 In issuing that Opinion, we noted that because the question regarding 
deliberative process was presently being considered in a pending appeal before 
the Oklahoma Supreme Court, we could not address your question regarding 
deliberative process privilege at that time.
¶3 The Oklahoma Supreme Court has now ruled in that case, Vandelay 
Entertainment, LLC v. Fallin, 2014 OK 109, 343 P.3d 1273, holding that the deliberative process 
component of executive privilege exists in Oklahoma--not based on statutory 
law--but based on both common law and the Oklahoma Constitution. Id. ¶ 
29, 343 P.3d at 1279. In light of that ruling, you ask us to consider again 
whether the deliberative process privilege permits the Workers' Compensation 
Commissioners to confidentially deliberate when deciding individual cases heard 
by the Commission under the various provisions of Title 85A.
I.
The Oklahoma Supreme Court Ruled That the Deliberative Process Privilege is 
Rooted Not Only in Common Law, But Also in the State Constitution's Separation 
of Powers Provision.
¶4 In Vandelay, the Oklahoma Supreme Court was asked to determine 
whether the deliberative process privilege existed in Oklahoma in the context of 
Governor Fallin's assertion of the privilege in response to an Open Records Act 
request. While the trial court affirmed that the deliberative process privilege 
exists in Oklahoma, it held so only on the basis of common law. Id., 
2014 OK 109, ¶ 4, 343 P.3d 1273, 1275. The Supreme Court went further, 
holding that the privilege is rooted in both common law and constitutional 
inherent powers--powers reflected in the Separation of Powers 
Provision of the Oklahoma Constitution. Id. ¶¶ 12, 13, 343 P.3d at 
1276.
¶5 The Vandelay Court heavily relied on the court's prior decision in 
Ford v. Board of Tax-Role Corrections, 431 P.2d 423 (Okla. 1967), a case discussing the 
inherent power of the judicial department of government. Vandelay, 
2014 OK 
109, ¶ 13, 343 P.3d 
1273, 1276. In Ford, the Court "recognized that inherent powers 
are reflected in the separation of powers clause in Article 4, § 1 of 
the Oklahoma Constitution." Vandelay, ¶ 13, 343 P.3d at 1276 (emphasis 
added). In discussing the Ford case, the Vandelay Court held that 
the principles regarding the recognition and protection of inherent powers 
are equally applicable to all three co-equal branches of government:

While the Ford case dealt with a question concerning the inherent 
power of the judicial branch, the principles and analysis this Court 
applied in recognizing the inherent power of the judiciary are the same for 
recognizing and protecting the inherent powers of the other coequal 
branches.

Id. (emphasis added).
¶6 The Vandelay Court addressed one of the principles recognized in 
Ford, stating:

In Ford, this Court concluded the "powers properly belonging" to a 
branch of government were those "which [are] essential to the 
existence, dignity and functions [of the 
branch]" and include inherent powers.

Id. ¶ 14, 343 P.3d at 1276 (emphasis added).
¶7 Thus, under Vandelay, the principle that the "powers properly 
belonging to a branch of government" are those "which are essential to the 
existence, dignity, and function of the branch" is a principle that applies with 
equal force to all three branches of government.
¶8 In light of this understanding of the Separation of Powers Clause's 
protection of inherent powers, Vandelay held that the deliberative 
process privilege was available to Governor Fallin to protect the 
confidentiality of the frank, candid discussion and advice she received from her 
staff and advisors regarding governmental operations, procedures, and 
decision-making. So ruling, the Supreme Court agreed "with the United States 
Supreme Court's view that 'complete candor and objectivity from advisors calls 
for great deference from the courts' in determining the scope of executive 
privilege." Id. ¶ 19, 343 P.3d at 1277-78. The Court then concluded that 
the Governor, no less than the President, has a need to receive "'candid, 
objective, and even blunt or harsh opinions' provided by 'senior and executive 
branch officials' as well as a need to refuse to disclose such 
advice . . . ." Id. (emphasis added).
¶9 In the Court's words, the Governor's right to receive such advice and 
consultation:

[I]s essential to the existence, dignity and function of the Governor 
as chief executive and lies within the Governor's inherent power. The 
principle of separation of powers expressly declared in Article 4, 
§ 1, protects this privilege from encroachment by Legislative acts, such 
as the Open Records Act.

Id. ¶ 20, 347 P.3d at 1278 (emphasis added).
¶10 In recognizing the constitutional protection afforded the Governor's 
deliberative process by the Separation of Powers Clause, the Vandelay 
Court quoted with approval from Freedom Foundation v. Gregoire, 310 P.3d 
1252, 1258 (Wash. 2013), in which the Court held that refusal to recognize the 
gubernatorial communications privilege "would subvert the integrity of the 
governor's decision making process [thereby] damaging the functionality of 
the executive branch and transgressing the boundaries set by . . . separation of 
powers." Vandelay, ¶ 18, 343 P.3d at 1277 (emphasis added).
¶11 Applying the constitutional principles identified by the Vandelay 
Court, regarding the protection of inherent powers to the deliberations of the 
Workers' Compensation Commission, we conclude that the Commissioners' 
deliberations are protected by the deliberative process privilege.

II.
Frank, Candid and Confidential Deliberations Among the Workers' 
Compensation Commissioners are Essential to the Commissioners' Performance of 
Their Quasi-Judicial Function, and Accordingly, Their Deliberations are 
Protected by the Deliberative Process Privilege by Virtue of the Oklahoma 
Constitution's Separation of Powers Provision, Article IV, Section 1. 

A. The Workers' Compensation Commissioners are Constitutionally Vested With 
the Authority to Exercise the State's Judicial Power.
¶12 The three Workers' Compensation Commissioners are empowered to hear three 
types of appeals under various provisions of Title 85A of the Oklahoma statutes. 
First, under the provisions of 85A O.S.Supp.2014, § 78(A), the Commissioners are 
authorized to reverse, modify, or affirm decisions or awards made by the 
Commission's Administrative Law Judges. Second, under the provisions of 
85A O.S.Supp.2014, § 
211(B)(5), the Commissioners may review adverse benefit determinations made 
under the Oklahoma Employment Injury Benefit Act. Third, under the provisions of 
85A O.S.Supp.2014, §§ 
322 and 323, the Commissioners may confirm, reverse, or modify arbitration 
awards entered under Title 85A.
¶13 Under the Oklahoma Constitution, the judicial power of the State is not 
exclusively vested in judges or courts. Rather, under Article VII, Section 1 of 
the Oklahoma Constitution, both legislative and executive branch bodies are also 
vested with the State's judicial power:

The judicial power of this State shall be vested in the Senate, 
sitting as a Court of Impeachment, a Supreme Court, the Court of Criminal 
Appeals, . . . District Courts, and such Boards, Agencies and Commissions 
created by the Constitution or established by statute as exercise adjudicative 
authority or render decisions in individual 
proceedings.

Id. (emphasis added).
¶14 As under Title 85A the Workers' Compensation Commissioners exercise 
adjudicative authority and render decisions in individual proceedings, the 
Commissioners are vested with authority to exercise the State's judicial 
power.

B. In Exercising the State's Judicial Power, the Workers' Compensation 
Commissioners Act in a Quasi-Judicial Capacity.
¶15 When the State's judicial power is being exercised by other than members 
of the Judicial Branch, the power being exercised is referred to as 
quasi-judicial power.
[1] Thus, in all three instances in which the Workers' 
Compensation Commissioners act as an appellate tribunal, they are performing a 
quasi-judicial function--the exercise of a judicial power by other than a member 
of the Judicial Branch of government, such as a judge or justice.
¶16 The Commissioners' performance of a quasi-judicial function is not 
unusual as under the Oklahoma Constitution and statutes, quasi-judicial 
functions are performed by a variety of Executive Branch entities. Licencing 
agencies, such as the Oklahoma Board of Dentistry and the Oklahoma Pharmacy 
Board, act in a quasi-judicial capacity in disciplining their licensees, as does 
a regulatory commission, such as the Oklahoma Horse Racing Commission, when it 
conducts individual proceedings to discipline horse owners and trainers. Indeed, 
even the Attorney General, in issuing Attorney General Opinions, acts in a 
quasi-judicial capacity. York v. Turpen, 1984 OK 26, ¶ 9, 681 P.2d 763, 767.
C. Confidential Deliberations are an Essential Component of the 
Decision-Making Process of the Workers' Compensation Commissioners When Acting 
in Their Quasi-Judicial Capacity.
¶17 In Vandelay, discussing the Governor's need to seek 
and receive advice in aid of deliberations and decision-making, the court held 
that confidentiality was necessary:

[T]he public interest is best served by the Governor seeking and receiving 
advice to aid in deliberations and decision-making. The United States Supreme 
Court has observed "[T]hose who assist [executive decision-makers] must be 
free to explore alternatives in the process of shaping 
policies and making decisions and to do so in a way many would be 
unwilling to express except privately."

Vandelay, ¶ 17, 343 P.3d at 1277 (emphasis added) (quoting, with 
approval, United States v. Nixon, 418 U.S. 683, 708 (1974) (superseded 
by statute on other grounds)).
¶18 Just as the deliberative process privilege is necessary to the Executive 
function, such confidentiality is equally necessary to the 
Judicial function. The United States Court of Appeals for the Eleventh Circuit 
discussed the need for deliberative process privilege in the Judicial Branch in 
In the Matter of Certain Complaints Under Investigation by an Investigating 
Committee v. Mercer, 783 F.2d 1488 (11th Cir. 1986). 
Comparing judges' need for confidential communications with that of the 
President as explored in United States v. Nixon, the Eleventh Circuit 
Court stated:

Judges, like Presidents, depend upon open and candid discourse 
with their colleagues and staff to promote the effective 
discharge of their duties. The judiciary, no less than the executive, is 
supreme within its own area of constitutionally assigned duties. 
Confidentiality helps protect judges' independent reasoning from improper 
outside influences. It also safeguards legitimate privacy interests of both 
judges and litigants.

Id. at 1519-20 (emphasis added).
¶19 In a more recent case, an Illinois appellate court described judges' need 
for confidential deliberations as follows:

Confidential communications between judges and between judges 
and the court's staff certainly "originate in a confidence that they will not be 
disclosed." Judges frequently rely upon the advice of their 
colleagues and staffs in resolving cases before them and have a 
need to confer freely and frankly without fear of disclosure. 
If the rule were otherwise, the advice that judges receive and 
their exchange of views may not be as open and honest as the 
public good requires.

Thomas v. Page, 837 N.E.2d 483, 489-90 (Ill. App. Ct. 2005) (emphasis 
added).
¶20 Continuing the discussion, the Illinois appellate court found that 
confidentiality was a necessary component of the 
judicial decision-making process:

In order to protect the effectiveness of the judicial 
decision-making process, judges cannot be burdened with a suspicion that their 
deliberations and communications might be made public.
. . . .
The very integrity of the process often 
rests on judges' candid communications with their colleagues and 
staffs and, as a consequence, the confidentiality of such matters 
is a necessary component of the process.

Id. at 490 (emphasis added).

D. Because Confidential Deliberations Are Essential to the Workers' 
Compensation Commissioners' Quasi-Judicial Decision-Making Process, the 
Commissioners' Deliberations Are Protected by the Deliberative Process 
Privilege.
¶21 As noted above, in deciding the appellate cases before them, the Workers' 
Compensation Commissioners are exercising the judicial power of the State, 
vested in them by Article VII, § 1 of the Oklahoma Constitution. In exercising 
that power, the Commissioners act in their quasi-judicial capacity and have the 
same need as judges to engage in confidential communications among themselves 
and with their staff--a necessary component of their quasi-judicial deliberative 
process. Those performing judicial functions of the State--regardless of whether 
they are judges and justices in the Judicial Branch; or Executive Officials; or 
State Agencies, Boards, or Commissions--have the same inherent need as the 
Governor for confidential deliberations. The confidentiality of 
the pre-decisional deliberative process for those acting in a quasi-judicial 
capacity is essential to their function and inherent power. 
Accordingly, under the teachings of Vandelay, it is beyond the 
power of the Legislature to deprive those performing quasi-judicial functions, 
such as the Workers' Compensation Commissioners, of the 
confidentiality of their deliberations. And, as Vandelay 
makes clear, the privilege not only attaches to verbal communications, it also 
attaches to written communications.
¶22 Thus, as a matter of constitutional law, under the State Separation of 
Powers Provision, the deliberations of the Workers' Compensation Commissioners 
are protected by the deliberative process privilege.
[2] 
 

¶23 Furthermore, under the teachings of Vandelay, communications 
must be pre-decisional and deliberative to fall within the deliberative process 
privilege. 2014 OK 
109, ¶ 24, 343 P.3d 
1273, 1278. 
¶24 Of course, all hearings on the appeals that come before the Commission, 
as well as the appellate record and the briefs and memorandums filed by the 
parties, do not fall within the privilege. Rather, the privilege attaches to 
written or oral deliberative, pre-decisional communications engaged in as part 
of the Commissioners' decision-making process in cases decided under their 
judicial power.
¶25 The privilege would thus protect all verbal communications among all 
three Commissioners sitting down to discuss a case, or deliberative 
communications between two of the Commissioners, as well as such discussions 
with Commission staff members tasked with aiding the Commissioners in deciding 
the case. The privilege would further attach to proposed draft orders, staff 
memorandum prepared in aid of the decision-making process, and any other 
pre-decisional, deliberative communication related to the cases decided by the 
Commissioners in the exercise of their judicial power.
¶26 Because, as a matter of constitutional law, the Workers' Compensation 
Commissioners' deliberations are protected by the deliberative process 
privilege, we conclude that the provisions of Oklahoma's Open Meeting Act, 
25 O.S.2011 & Supp.2014, §§ 
301 - 314, are not applicable to the Commissions' oral deliberations.
¶27 In concluding that confidential deliberations are essential to the 
Workers' Compensation Commissioners' quasi-judicial decision-making process and 
that, therefore, such deliberations are protected by the deliberative process 
privilege, we need not and do not determine the full contours of the 
deliberative process privilege available to other members of the Executive 
Branch. Rather, we deal today only with the Workers' Compensation Commission--a 
Commission created to take over the function of the Workers' Compensation 
Court.

¶28 It is, therefore, the official Opinion of the Attorney General that:
1. The Workers' Compensation Commissioners are empowered to act as an 
appellate tribunal in three types of appeals: review of decisions or awards made 
by the Commission's Administrative Law Judges, 

85A O.S.Supp.2014, § 78(A); review of adverse 
benefit determinations under the Oklahoma Employment Injury Benefit Act, 
85A O.S.Supp.2014, § 
211(B)(5); and review of arbitration awards, 85A O.S.Supp.2014, §§ 322 and 323.
2. In acting as an appellate tribunal, the Workers' Compensation 
Commissioners, by virtue of Article VII, Section 1 of the Oklahoma Constitution, 
are exercising the judicial power of the State and act in a quasi-judicial 
capacity.
3. Confidential, pre-decisional deliberations are an essential component of 
the decision-making process when the Workers' Compensation Commissioners act in 
their quasi-judicial capacity.
4. Under the teachings of the Oklahoma Supreme Court's decision in 
Vandelay Entertainment, LLC v. Fallin, 2014 OK 109, 343 P.3d 1273, because confidential deliberations are 
essential to the Workers' Compensation Commissioners' quasi-judicial 
decision-making process, the Commissioners' pre-decisional deliberations in 
cases considered in the exercise of their judicial power are protected by the 
deliberative process privilege by virtue of the Separation of Powers Provision 
of Article IV, Section 1 of the Oklahoma Constitution.
E. SCOTT PRUITT
Oklahoma Attorney General
NEAL LEADER
Senior Assistant Attorney General 

FOOTNOTES
[1] A judicial act is one 
performed by the Judicial Branch of government. See Umholtz v. City of 
Tulsa, 1977 OK 
98, ¶ 8, 565 P.2d 
15, 18, ("A quasi-judicial duty is one lying in the judgment or discretion 
of an officer other than a judicial officer.") (emphasis added) 
(quoting with approval from Gray v. Bd. of County Comm'rs, 
1957 OK 152, ¶ 5, 312 P.2d 959).
A quasi-judicial power, on the other hand, "is one imposed upon an officer or 
a board involving the exercise of discretion, judicial in its 
nature, in connection with and as incidental to the administration of 
matters assigned or entrusted to such officer or board." State ex rel., 
Tharel v. Bd. of County Comm'rs, 1940 OK 468, ¶ 18, 107 P.2d 542, 549 (emphasis added) (quoting Bd. of 
County Comm'rs v. Cypert, 1917 OK 248, ¶ 6, 166 P. 195, 198). 
[2] As Governor Fallin's Exhibits at Tab 7 of the certified 
appellate Record in Vandelay Enterprises v. Fallin, (Supreme Court Case 
No. 113,187) demonstrates, the deliberative process is not new to Oklahoma. 
Rather, it has been invoked on numerous occasions: Justice Marion Opala relied 
on the privilege while testifying in litigation challenging Oklahoma's Anti-Cock 
Fighting laws (Governor's Exhibit 1, pgs. 52, 53); State Treasurer Ken Miller 
invoked the privilege to quash a subpoena for his appearance (Governor's Exhibit 
2); for decades the Oklahoma Horse Racing Commission invoked the deliberative 
process privilege in refusing to release deliberative information (Governor's 
Exhibit 3); and the Department of Securities relied upon the privilege in 
support of its motion to quash a notice to take the deposition of a department 
attorney (Governor's Exhibit 4).

 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1940 OK 468, 107 P.2d 542, 188 Okla. 184, 
STATE ex rel. THAREL v. BOARD OF COM'RS OF CREEK COUNTY
Discussed

 
1917 OK 248, 166 P. 195, 65 Okla. 168, 
BOARD OF COUNTY COM'RS OF ATOKA COUNTY v. CYPERT.
Discussed

 
1957 OK 152, 312 P.2d 959, 
GRAY v. BOARD OF COUNTY COMMISSIONERS
Discussed

 
1967 OK 90, 431 P.2d 423, 
FORD v. BOARD OF TAX-ROLL CORRECTIONS
Cited

 
1977 OK 98, 565 P.2d 15, 
UMHOLTZ v. CITY OF TULSA
Discussed

 
2014 OK 109, 343 P.3d 1273, 
VANDELAY ENTERTAINMENT, LLC v. FALLIN
Discussed at Length

 
1984 OK 26, 681 P.2d 763, 55 OBJ 1013, 
State ex rel. York v. Turpen
Discussed

Title 25. Definitions and General Provisions

 
Cite
Name
Level

 
25 O.S. 301, 
Short Title
Cited

Title 85A. Workers' Compensation

 
Cite
Name
Level

 
85A O.S. 78, 
Workers' Compensation Commission - Appeal to Commission - Appeal to Supreme Court
Discussed

 
85A O.S. 211, 
Employer's Denial of Claim - Notice - Appeal - Invalidity Clause
Discussed

 
85A O.S. 322, 
Application and Motion for Judgment Confirming Award
Discussed