O’NIELL, Chief Justice.
 

 Two graduates of a law school are applying to be licensed to practice law, without having to pass the examination prescribed by the Supreme Court Examining Committee, as required by Act No. 113 of 1924, and by rule 15 of the Supreme Court Rules (171 La. xiv), fixing the requirements for admission to the bar. The petitioners contend that the statute and the rule of the court are unconstitutional in denying the right of a holder of the degree of Bachelor of Laws from Tulane University to practice law without further examination. The degree of Bachelor of Laws was conferred upon Steckler by Tulane University, and upon Gaudin by Loyola University. Gaudin does not contend that the act of 1924 and rule 15 of the Supreme Court Rules, requiring all applicants for admission to the bar to pass an
 
 *413
 
 examination by tbe Supreme Court Examining Committee, are unconstitutional in requiring graduates of the law school of Loyola University or of Louisiana State University to pass such an examination, unless the statute and the rule of court are unconstitutional in requiring the graduates of the law department of Tulane University to pass such an examination. Gaudin’s argument is that, if the act of 1924 and the court rule adopted in pursuance'thereof are unconstitutional —as he contends they are — in so far as they attempt to require a graduate of the Law School of Tulane University to pass an examination by the Supreme Court Examining Committee, the statute and the rule of court should be declared entirely unconstitutional, because, to leave the statute in effect against the graduates of the two other law schools in this state, but without effect against the graduates of Tulane University Law School, would be making a law which would discriminate against the two other law schools, and which the Legislature did not intend to make. Gaudin’s argument in that respect is supported by the fact that the Legislature has declared, by Act No. 93 of 1908, that the diplomas and degrees granted by the Board of Supervisors of Louisiana State University “shall be recognized by the courts and other officials of Louisiana as entitling the graduates holding said diplomas or degrees to the samfe rights, immunities and privileges in the State of Louisiana as the diplomas or degrees of any other institution of learning whatsoever,” and by the fact that the Legislature has since declared, by Act No. 136 of 1912, in the same language as in Act No. 93 of 1908, that the diplomas and degrees granted by Loyola University shall have the same recognition as those granted by any ot’her university or institution of learning. Gaudin’s alternative argument, therefore, is so well founded that we consider that he has the same interest that Steekler has in the question of \ constitutionality of Act No. 113 of 1924 and of rule 15 of the Supreme Court Rules.
 

 Act No. 113 of 1924 requires every applicant for admission to the bar — even those holding a diploma from a law school — to pass a satisfactory examination before the examining committee appointed by the Supreme Court, on such subjects and under such rules as may be prescribed by the court; and the statute provides that applicants for admission to the bar who have'not received a diploma from an approved law school shall have pursued a course of study under the supervision of a reputable Louisiana lawyer for a period not less than three years.
 

 Rule 15 of the Supreme Court Rules (171 La. xiv) provides for the appointment of the examining committee, prescribes the particular subjects of the examination, and adds to the qualifications and conditions required by the statute.
 

 The claim of the petitioners here is founded upon a simple statement of the laws on the subject. By Act No. 43 of 1884, which was adopted as an amendment of the Constitution of 1879, Tulane University of Louisiana was created, by the changing of the name of the University of Louisiana, in New Orleans, to that of Tulane University of Louisiana. By the terms of the constitutional amendment, the Board of Administrators of the Tulane Education Fund was incorporated as the successor of the Board of Admin
 
 *415
 
 istrators of the University of( Louisiana, which had been incorporated by Act No. 320 of 1835; and the constitutional amendment declared: “That the Board of Administrators of the Tulane Education Fund, as administrators of the University of Louisiana, shall have the rights, powers, privileges, franchises and immunities, now vested in the Board of Administrators of the University of Louisiana by existing laws.” The administration and control of all of the property of the old university was ordered turned over to the new board, and was exempted from taxation ; and, in consideration therefor, the new board was obligated to use perpetually the powers conferred by the act, and all powers vested in the board, for the purpose of maintaining in the city of New Orleans a great university, devoted to the intellectual, moral, and industrial education and advancement of the youth of the state, under the terms of the donation by Paul Tulane. In further consideration of the powers conferred upon the new board of administrators, the board was obliged to waive all claim for appropriation by the state, and to give, continuously, free tuition to one student, in the academic department, from each senatorial district, and from each representative district or parish, to be nominated by the member of the Legislature, from among the bona fide residents of his district of parish.
 

 Among the rights or privileges that were vested originally in the Board of Administrators of the University of Louisiana, and that were therefore transferred to the Board of Administrators of the Tulane Education Fund, by the constitutional amendment of 1884, was the right to confer diplomas and degrees; which right was given originally by section 9 of Act No. 320 of 1855, which section became section 1359 of the Revised Statutes of 1870, viz.: • '
 

 “They [the administrators] shall have the right of conferring under their common seal, on any person whom they may think worthy thereof, all literary honors and degrees known and usually granted by any university or college in the United States or elsewhere.
 

 .“The degree of Bachelor of Law * * * granted by them shall authorize the person on whom it is conferred to practice law * * in this State.”
 

 The provisions of the constitutional amendment of 1884 were recognized in article 255 of the Constitution of 1898 and in article 256 of the Constitution of 1913, thus;
 

 “The Tulane University of Louisiana, located in New Orleans, is hereby recognized as ■ created and to be developed in accordance with the provisions of legislative act No. 43, approved July 5, 1884, and by approval of the electors, made part of the Constitution of the State.”
 

 The same Recognition appears in section 24 of article 12 of the Constitution of 1921, viz.:
 

 “The Tulane University of Louisiana, located in New Orleans, is hereby recognized as created and to be developed in accordance with' the provisions of the Legislative Act No. 43, approved July 5, 1884.”
 

 It is observed that, in the adoption of section 24 of article 12 of the Constitution of 1921, there was omitted the latter part of the language of article 255 of the Constitution of 1S98 and of article 256 of the Consti
 
 *417
 
 tution of 1913, viz., “and by approval of the electors, made part of the Constitution of the State.” We shall not give further consideration to the omission of that expression, because it seems to have been only descriptive of the constitutional amendment, in accordance with which Tulane University was said to be “created and to be developed”; and it is likely that the writers of section 24 of article 12 of the Constitution considered that that part of the description of the constitutional amendment, relating to Tulane University, was unnecessary and superfluous description. The purpose of the reference to Tulane University, in each of the three Constitutions adopted after the amendment of the Constitution of 1879 pursuant to Act No. 43 of 1884, was to recognize that the constitutional amendment, according to Act No. 43 of 1884, was' an irrevocable contract between the state of Louisiana and the Board of Administrators of the Tulane Education Fund. It is so declared in the seventh section of Act No. 43 of 1884, viz.:
 

 “That this act, in all its provisions, be and the same is hereby declared to be a contract between the State of Louisiana and the Administrators of the ‘Tulane Education Fund,’ irrevocably vesting the said Administrators of the ‘Tulane Education Fund,’ with the powers, franchises, rights, immunities and exemptions herein enumerated and hereby granted, and irrevocably binding said administrators to develop, foster and maintain as above provided, the University as aforesaid in the city of New Orleans, subject to and in accordance with the terms of this act.”
 

 The argument of the petitioners in this proceeding, predicated upon the laws which we have referred to, is that any one who has been granted the degree of Bachelor of Laws by Tulane University is protected by the constitutional amendment, according to Act No. 43 of 1884, and by the reference thereto in the Constitution itself, against being deprived, by an act of the Legislature or by a rule of this court, of his right to be admitted to practice law in this state without further examination into his knowledge of the law. The petitioners contend further that the attempt of the Legislature and of this court to deprive those to whom Tulane University has granted the degree of Bachelor of Laws of the right to be admitted to practice law without further examination into their knowledge of the law is violative of section 10 of article 1 of the Constitution of the! United States, forbidding the states to pass any law impairing the obligation of a contract.
 

 The question presented was of such great importance that, as a matter of courtesy, we invited the dean and the faculty of each of the three law schools in Louisiana, as well as the Supreme Court Examining Committee, to file briefs, if they so desired, as amici curiae. And we take occasion now to acknowledge the great service rendered by. the very able and thorough discussion of both sides of the issue presented. The three law schools and the Supreme Court Examining Committee express the opinion — and support it with argument — that Act No. 113 of 1924 and the rule of court adopted in pursuance thereof are valid, in requiring the graduates of the law schools, as well as all other applicants for admission to the bar, to pass the examination prescribed by the Supreme Court Examining Committee.
 

 
 *419
 
 If the stipulation in the ninth section of Act No. 320 of 1855, that the degree of Bachelor of Laws conferred by the Board of Administrators of the University of Louisiana should authorize the person on whom it was conferred to practice law in this state, was valid, and if the obligation of the state to recognize that privilege of the holders of such a degree became one of the obligations of the contract entered into by and between the state of Louisiana and the Board of Administrators of the Tulane Education Fund, by virtue of the constitutional amendment made in accordance with the provisions of Act No. 43 of 1884, it would seem to follow that the right or authority of the Board of Administrators of the Tulane Education Fund, to that extent, is so protected by the provisions of section 10 of article 1 of the Constitution of the United States, under the doctrine of the celebrated Dartmouth College Case, 4 Wheat. 518, 4 L. Ed. 629, that the state of Louisiana could not take away that right or authority of the Board of Administrators of the Tulane Education Fund, without its consent, even by a constitutional amendment. It is not necessary, however, to give further consideration to that aspect of the case, because we are convinced that the Legislature did not, by the provisions of the ninth section of the act of 1855, or by proposing the constitutional amendment which was adopted in accordance with the act of 1884, surrender any of the authority of the Legislature to prescribe the conditions on which a person might be licensed to practice law — which is subject, of course, to such further conditions as may be imposed by this court. The power of the Legislature to prescribe minimum requirements for admission to the bar is merely a part of the police power; and a fundamental rule in our form of state government is that the Legislature cannot surrender irrevocably any of the state’s police power. Const. 1921, art. 19, § 18; Const. 1913, art. 263; Const. 1898, art. 263; Const. 1870, art. 235; State of Louisiana v. City of New Orleans, 151 La. 24, 91 So. 533.
 

 By the constitutional amendment of .1884, as we have shown, the state transferred to and conferred upon the Board of Administrators of the Tulane Education Fund many rights that are apparently protected by the tenth section of article 1 of the Constitution of the United States, under the doctrine of the Dartmouth College Case. But the right to grant a license to practice law— in disregard of the authority of the Legislature or of this court to prescribe the requirements for such license — was not one of the contract rights that were granted by the constitutional amendment of 1884. All that the amendment did,
 
 in that respect,
 
 was to transfer to the Board of Administrators of the Tulane Education Fund such authority as the Board of Administrators of the University of Louisiana theretofore had. The right which the Board of Administrators of the University of Louisiana had, with regard to granting a license to practice law, was the right given by the declaration in the ninth section of Act No. 320 of 1855, that the degree of Bachelor of Laws granted by the board should authorize the person on whom it was conferred to practice law in -this state. That was merely a legislative grant of authority, subject to repeal by the Legislature at any time. But the Legislature did not—
 
 *421
 
 because it could not, without usurping a judicial function — undertake to deprive the judicial department of its right to impose further conditions, in addition to such reasonable conditions as the Legislature might impose, upon the right of a person to be licensed to practice law. The declaration in the ninth section of the act of 1855, that the degree of Bachelor of Laws granted by the Administrators of the University of Louisiana should authorize the person on whom it was conferred to practice law in this state, must be construed to mean that the degree of Bachelor of Laws was sufficient evidence of the holder’s qualification to practice law, unless the Supreme Court should prescribe some further qualification, or some additional condition precedent to the license to practicing law. The expression in the ninth section of the act of 1855 is subject to reasonable interpretation, because a literal construction would produce the absurd consequence that the holder of the degreé of Bachelor of Laws from the University of Louisiana could not be deprived, for any cause, of the right to practice law. Worse than that, to construe the ninth section of the act of 1855 as meaning, literally, that the judicial department of the state government could not prescribe by general rules the qualifications for a graduate of the law department of the University of Louisiana to practice law, would render the ninth section of the act of 1855 unconstitutional. The power to prescribe ultimately the qualifications for admission to the bar belongs to the judicial department of the government of the state. And each of the three departments of the state government is forbidden to exercise any power properly belonging to either of the others. That is one of the fundamental rules in our form of government, and is safeguarded in the Constitution of the United States, and in the Constitution of every state, and has been vouchsafed in every Constitution this state has had, except that of 1868. Const. 1812, art. 1, § 2; Const. 1845, art. 2; Const. 1852, art. 2; Const. 1864, art. 4; Const. 1879, art. 15; Const. 1898, art. 17; Const. 1913, art. • 17; Const. 1921, art. 2, § 2. That phase of the question before us shows that the provisions of rule 15 of the Supreme Court Rules is valid, whether Act No. 113 of 1924 should be declared constitutional or unconstitutional. It is admitted judicially — almost if not quite universally — that the prescribing of the ultimate qualifications for admission to the bar is a judicial function. The Legislature may, in the exercise of its police power, and in the performance of its duty to protect the public against imposition or incompetence on the part of persons professing to be qualified to practice the so-called learned professions, fix minimum qualifications or standards for admission to the bar. But the courts of justice have, besides that interest, another and special interest, in the character and qualifications of the members of the bar — who are considered in this country as officers of the courts. In fact, a proper administration of justice depends as largely upon the conscience, competence and conduct of the members of the bar, as upon the work of the men on the bench. The inherent power of the Supreme Court to admit or disbar attorneys at law may be aided and regulated by statute, but it cannot be thereby frustrated or destroyed. In re Richards (Mo. Sup.) 63 S.W.(2d) 672. In support
 
 *423
 
 of the proposition that the Legislature in the exercise of its authority to fix minimum qualifications or standards for admission to the har cannot deprive the Supreme Court of its authority to prescribe the ultimate qualifications, of those who possess also the qualifications prescribed by the Legislature, for admission to the bar, we are referred to an appropriate and excellent Opinion of the Justices of the Supreme Judicial Court of Massachusetts (1932) 279 Mass. 607, 180 N. E. 725, 81 A. L. R. 1059, and the decisions cited in the footnote, 81 A. L. R. 1063, viz.: In re Bailey, 30 Ariz. 407, 412, 413, 248 P. 29; In re Day, 181 Ill. 73, 82, 94, 54 N. E. 646, 50 L. R. A. 519; People v. People’s Stock Yards Bank, 344 Ill. 462, 470, 176 N. E. 901; Olmsted’s Case, 292 Pa. 96, 103, 104, 140 A. 634; In re Leach, 134 Ind. 665, 671, 34 N. E. 641, 21 L. R. A. 701; Hanson v. Grattan, 84 Kan. 843, 845, 115 P. 646, 34 L. R. A. (N. S.) 240; In re Branch, 70 N. J. Law (41 Vroom) 537, 574, 575, 57 A. 431; In re Application of K., 88 N. J. Law, 157, 98 A. 668; In re Bruen, 102 Wash. 472, 476, 172 P. 1152; In re Application for License to Practice Law, 67 W. Va. 213, 218, 67 S. E. 597; Danforth v. Egan, 23 S. D. 43, 47, 119 N. W. 1021, 139 Aim St. Rep. 1030, 20 Ann. Cas. 418; In re Platz, 42 Utah, 439, 443, 444, 132 P. 390 ; State v. Cannon, 206 Wis. 374, 240 N. W. 441; Ex parte Garland, 4 Wall. 333, 378, 379, 18 L. Ed. 366; Brydonjack v. State Bar, 208 Cal. 439, 443, 444, 281 P. 1018, 66 A. L. R. 1507:
 

 The petitioners, in this case, cite, in support of their application, State ex rel. Duffel, District Attorney, v. Marks, 30 La. Ann. 97, decided in 1878; Ex parte Schaefer, Applying to be Examined for a License to Practice Law, 32 La. Ann. 1102, decided in 1880; and In re Villere, 33 La. Ann. 998, decided in 1881. The Schaefer Case is not at all pertinent to the present case. The two other cases cited are pertinent to the extent only that it was recognized in those cases that the Supreme Court was, at .that time, authorized to issue a license to a graduate of the Law Department of the University of Louisiana, without examination into his knowledge of the law. But, at that time, as we have shown, the law exempted such graduates from the examination required of other applicants for a license to practice law. The opinion rendered in the Villere Case contains expressions which seem to be opposed to the claim of the petitioners in the present case. Eor example, it was said that the provision in the ninth section of Act No. 320 of 1855 (sections 127 and 1359 of the Revised Statutes of 1870), that the degree of Bachelor of Laws granted by the Administrators of the University of Louisiana should authorize the person on whom it was conferred to practice law, had to be construed with reference to those provisions of the Revised Statutes which required a license from the Supreme Court, as a condition precedent to the right to practice law. So construing and harmonizing the different sections of the Revised Statutes on the subject, the court stated its conclusions thus:
 

 “That the graduates of the law school or Law Department of the University of Louisiana are entitled to a license to practice law and to receive such license from the Supreme Court of the State; that the Court is
 
 authorized and empowered
 
 to grant the license upon the presentation of the diploma and
 
 *425
 
 proof of good, character, and
 
 without examination.
 
 To say that the diploma of the law school is the equivalent of a license, and of itself entitles the party to practice law without any action of the Court or proceeding before it, would entirely nullify that clause of the law which expressly designates the graduates of the law school, by name, as a class of persons entitled to receive their license from the Supreme Court, and render the granting of such license by the Court a vain thing and a meaningless ceremony.”
 

 We have italicized the words, in the quotation, which show that the court considered that it was not compelled but merely
 
 authorized and empowered
 
 to grant the license upon presentation of a diploma from the Law Department of the University of Louisiana, and upon proof of good character, and
 
 without examination.
 
 There is no expression, nor implication, in the opinion rendered in the Villere Case, of denial of the authority of the court, at that time, to adopt a rule requiring the graduates of the Law Department of the University of Louisiana to pass an examination before being licensed to practice law. On the contrary, the declaration that a license from the court was essential, and that the diploma was not sufficient, to authorize the graduate to practice law, was a recognition, on the part of the court, of its having yet the authority to impose any reasonable conditions upon the right of a graduate of the Law Department of the University of Louisiana to receive a license to practice law.
 

 Our conclusion, therefore, is that the petitioners are not entitled to a license to practice law without complying with the provisions of Act No. 113 of 1924 and rule 15 of the rules of this court; and it is so ordered.
 

 ST. PAUL, J., absent.