280 So.2d 217 (1973)
Ex parte Paul Stephen MINOR and Jack Mark Stoller
No. 53673.
Supreme Court of Louisiana.
June 28, 1973.
Application denied. The committee authorization under the document shall be effective only until the admission of the applicant to the practice of law and the authorization form required of these applicants shall be amended to so delimit the effective period of the written authorization.
*218 SUMMERS, J., assigns reasons for denying this application.
TATE, J., dissents from the denial of the application and assigns written reasons.
BARHAM, J., dissents from the denial of the application.
DIXON, J., dissents; this rule newly instituted by the committee in Feb., 1973, has never been submitted to and approved by this Court, as required by the Articles of Incorporation of the Bar Association.

Application for Review of Action of the Committee on Bar Admissions.
TATE, Justice (dissenting).
The necessities of modern mass society may require a certain amount of mass bureaucratic processing and of governmental intrusion into the privacy of individuals. In a democratic republic of free men, these must be kept to the minimum.
A word should be said about the request of the applicants. In their letter, they respectfully advised the Committee that in their view the blanket authorization to sift through their records, wherever situated and at whatever far time in the future the bar association might desire to do so, was not authorized by the rule of this court (which had delegated to the Committee certain bar admission functions) and was overbroad and unreasonable. (The court in fact limited the duration of the broadly worded waiver to the period before admission to the bar.)
Each of the applicants stated that "if the Supreme Court of Louisiana deems the waiver originally requested reasonable, I will comply with the request" and each further stated "If the committee deems that my character is in question .... I would not object to waiving my right of confidentiality ..." Each of the applicants succinctly summarized their position as follows: "May I please emphasize that I am not refusing to provide the Committee with records or information that it deems necessary to establish my good moral character. My objection lies in the fact that the terms of the document waives all my rights to confidentiality of personal records before a question as to my moral character is put at issue."
The respectful refusal of these earnest young applicants to complete a form they regarded as excessive, unreasonable, and unauthorized is in the finest tradition of our bar and of our Republic. Blind acceptance of authority's edicts is not an American ideal. The legal profession is the first-line (and sometimes the last-line) defense of individual liberty and of the right of the individual to be free from unreasonable governmental restraint. I can only deplore any attitude of those responsible for administering the affairs of the bar i.e., this court and the organized bar committeeswhich would somehow find it blameworthy and a cause for investigation of character that young Americans make a reasoned attack upon a bureaucratic regulation they regard as unauthorized and arbitrary.
In my view, the form for applicants required by the Committee on Bar Admissions created by this court is not authorized by the rule of this court creating this committee. Additionally, this form represents an unreasonable and excessive intrusion through authority of government into the privacy of individuals. Its requirement that the individual give his consent in advance to such intrusion, without further notice to him, is intolerable in a free society.
I cannot subscribe to such action under the color of governmental authority granted by this courtall the less, because our rule did not contemplate or authorize it. I respectfully dissent.
*219 SUMMERS, Justice (concurring in the refusal to grant writs).
"Every applicant to be admitted to the practice of law in this State must meet the following requirements until such time as they may be changed by the Board of Governors of this Association with the approval of the Supreme Court:
(A) At least forty-five days prior to the date fixed for the examination each applicant for admission must deliver to the Secretary of this Association an application addressed to the Committee on Bar Admissions on the required form, accompanied by an examination fee of thirty-five dollars ($35.00). The application shall be prepared by the applicant, in his own handwriting, and shall be sworn to by him before an officer authorized to administer oaths.
(B) Each applicant must produce satisfactory evidence that he is:
(a) Of good moral character,
(b) Twenty-one years of age,
(c) A citizen of the United States of America,
(d) A graduate of a law school that is approved by the American Bar Association.
(C) Each applicant must be certified to the Supreme Court by the Committee on Bar Admissions as having satisfactorily passed the required examinations." (Articles of Incorporation of Louisiana State Bar Association, Art. XIV, § 7)
These applicants for admission to the practice of law in the State of Louisiana, by a joint petition to this Court, seek a declaration that they have fulfilled all statutory requisites to qualify. In this connection, their petition alleges that the Committee on Bar Admissions lacks the statutory authority to require the signing of a "Certificate of Waiver" devised by the Committee to facilitate its inquiry into the "good moral character" of all applicants. The document authorizes the Committee to obtain information from employers, the Armed Forces, law enforcement agencies, educational institutions and federal, state, or local bar associations concerning applicants. It is also a waiver of the confidential nature of that information, together with a release of all claims resulting from disclosures made in reliance upon the waiver. For the February 1973 bar examination, all 118 applicants signed the certificate, 473 signed for the July 1973 exam. Only these two applicants refused.
Applicants assert that they have each submitted two certificates of good moral character. These, they say, constitute "satisfactory evidence" that they are "of good moral character" as the Articles of Incorporation of the Bar Association provide. It is argued, therefore, that the authorization and waiver to investigate their background is unnecessary, and the Committee is without authority to impose such a requirement.
Their position is that the Committee's failure to approve their applications, and the Committee's stated purpose to withhold the results of their bar examinations until an investigation to determine their eligibility has been conducted, constitutes an unreasonable classification resulting in a denial of due process and equal protection of the laws guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution.
This Court denied the application. Our ruling requires all applicants for admission to the bar to sign the authorization and waiver.
The contention that the Committee is without authority to require the signing of such an authorization and waiver is not well founded. Just as we have authorized the Committee to provide application forms for bar examination applicants (Art. XIV, § 8 ibid.) without setting forth the details of those forms, the implementation of the requirement that the applicant produce satisfactory *220 evidence of good moral character is not set forth in detail. Instead the experience, knowledge and good judgment of the Committee is relied upon to supply the necessary administrative procedures to meet the practical problems presented. It is now the universal practice for state supreme courts to delegate the administrative details of bar admission to a board or committee of bar examiners. Comment, 1970 Wisc.L.Rev. 471. Members of the Committee on Bar Admissions are especially knowledgeable and experienced in the affairs of the practicing bar. They are the profession's chosen representatives whom we have approved.
And while the powers of the Committee are merely recommendatory, and not binding upon this Court, the Committee was created for the express purpose of relieving the Court of the onerous duty of examining applicants for admissions. Of necessity, this involves investigating their fitness, both as to legal learning and moral character. Recognizing this responsibility of the Committee, this Court has traditionally accorded wide latitude to that body to enable it to adopt administrative and clerical procedures considered necessary to accomplish its mission. Thus, this Court will refuse to exercise its authority in contravention of the Committee's recommendations and practices, unless a clear showing is made by the applicant that the Committee's actions are arbitrary, unreasonable or contrary to sound principles applicable to bar admissions. The Committee has been scrupulous in the exercise of the authority granted to it by the court. Cf. Spears v. State Bar of California, 211 Cal. 183, 294 P. 697 (1930).
Since the authority of the Committee generally would include the right to devise and require the signing of this "Certificate of Waiver" in aid of its obligation to determine the "good moral character" of the applicant, it remains to inquire whether the action outlined constitutes an unreasonable classification resulting in a denial of due process and equal protection of the laws contrary to the First and Fourteenth Amendments to the United States Constitution.
Lawyers since ancient times have played a distinct and vital role in Anglo-American history. The hallmark of the legal profession has not been prerogatives; instead, it has been entrusted with and has shouldered grave responsibilities. All the interests of man encompassed within the guarantee to "life, liberty and property" are in the professional keeping of lawyers. He stands "as a shield" in defense of right and in defiance of wrong. Largely because of him, we enjoy the blessings of a government of laws and not the autocracy of government by willful men.
From a profession charged with such responsibilities there must be exacted those qualities of truth-speaking, of a high sense of honor, of granite discretion, of the strictest observance of fiduciary responsibility, that have, throughout the centuries, been compendiously described as "moral character". (See Separate Opinion of Frankfurter in Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957)).
It is no wonder, then, that good moral character is an indispensable qualification for admission to the practice of law. 64 A.L.R.2d 304 § 2. Surely the state's interest in protecting the public by insisting on high standards in such a profession is equally as important as the claim of deprivation of rights asserted here. See Beilan v. Board of Education, 357 U.S. 399, 78 S. Ct. 1317, 2 L.Ed.2d 1414 (1958); Adler v. Board of Education, 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517 (1952); In re Summers, 325 U.S. 561, 65 S.Ct. 1307, 89 L.Ed. 1795 (1945). First, the state through its admissions procedure seeks to insure its citizens that the bar is trustworthy and responsible. Second, the public responsibilities of lawyers and the leadership position of the bar justify investigation into the character of individuals to determine whether they are qualified to assume that degree of influence *221 in society. It is no mystery, therefore, that:
The practice of law is not open to all who wish to engage in it, nor is the pursuit of the legal profession a natural, inherent or vested right, as one guaranteed by the Constitution; it is a personal privilege, granted by license from the Court and in the nature of a franchise from the State, limited to persons of good moral character, with special qualifications ascertained and certified as prescribed by law. (Moity v. La. State Bar Assn., 239 La. 1081, 121 So.2d 87 (1960)).
See also State v. Rosborough, 152 La. 945, 94 So. 858 (1922); Ex parte Steckler, 179 La. 410, 154 So. 41 (1934).
Ultimately, the power to prescribe the qualifications for admission to the bar is vested in the judiciary of the state. And the constitutional structure of a tripartite system forbids the exercise by any of the three departments of government of power properly belonging to the other. Ex parte Steckler, supra; La.Const. Art. II, §§ 1 and 2.
Courts of justice have a special interest in the character and qualifications of the members of the barwho are considered in this country as officers of the court. In fact, a proper administration of justice depends as much upon the conscience, competence, conduct and good moral character of the members of the bar, as upon the work and character of the men on the bench. Theard v. United States, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957); Ex parte Steckler, supra.
And it is conceded by the highest authority that a state can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any required qualification must have a rational connection with the applicant's fitness or capacity to practice law. Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1967). The United States Supreme Court itself requires of applicants for admission to practice before it that "their private and professional character shall appear to be good." U.S.Sup.Ct. Rule 5(1) (1973). Canon No. 1 of the Code of Professional Responsibility and the Canons of Judicial Ethics provides: "Ethical Consideration 1-3. Before recommending an applicant for admission, a lawyer should satisfy himself that the applicant is of good moral character." Every state, plus the District of Columbia, Puerto Rico, and the Virgin Islands, requires some similar qualification. Law Students Research Council v. Wadmond, 401 U.S. 154, 91 S.Ct. 720, 27 L.Ed. 2d 749 (1971). See Konigsberg v. State Bar of Calif., 366 U.S. 36, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961); Schware v. Board of Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); Ex parte Garland, 71 U.S. (4 Wall.) 333, 18 L.Ed. 366 (1866). See generally Martindale-Hubbell Law Directory (103 Ed. 1970).
Satisfaction of the requirement of good moral character undoubtedly involves the exercise of delicate judgment; a judgment which expresses "an intuition of experience which outruns analysis and sums up many unnamed and tangled impressions; impressions which may lie beneath consciousness without losing their worth." Chicago B.&Q.R.Co. v. Babcock, 204 U.S. 585, 27 S.Ct. 326, 51 L.Ed. 636 (1917).
However, as I understand the contention of the applicants, it is not principally the "good moral character" qualification to which they object, it is the method used by the Committee to satisfy themselves which they find constitutionally objectionable. Specifically, applicants object to signing the "Certificate of Waiver", and, they say, there is no basis for requiring further inquiry into their moral character, or to withhold the result of their bar examination pending the investigation.
Initially it may be said that by asking for admission to the bar, an applicant puts *222 his own good moral character directly in issue. Rosencranz v. Tidrington, 193 Ind. 472, 141 N.E. 58 (1923). And, should proof of good moral character fall short of convincing the Committee it is its duty not to recommend admission. Application of Courtney, 83 Ariz. 231, 319 P.2d 991 (1957). Nor is a certificate of good moral character conclusive, although presented by an applicant for admission in the usual form, embracing the requisites of the Committee. Such a certificate may nevertheless be based upon fraud or mistake or want of proper information. Thus the Committee is not precluded from further inquiry into good moral character. Re Application for Attorney's License, 21 N.J.L. 345 (1848).
Louisiana is not the only state that requires its applicants for admission to practice law to execute a similar, or even broader certificate of waiver, which in most other jurisdictions is called an "Authorization and Release", and is required to be executed in duplicate before a Notary Public. According to statistics compiled by the National Conference of Bar Examiners, the majority of the states use the questionnaire form recommended by the National Conference of Bar Examiners which specifically includes an "Authorization and Release" which must be signed by all applicants.
According to the response filed herein by the Committee, the few states that do not utilize the questionnaire form recommended by the National Conference of Bar Examiners do, in fact, utilize a very similar form which includes a substantially similar "Authorization and Release", which, in Louisiana, has been called its Certificate of Waiverthe document petitioners have expressly refused to sign.
The signing of the Certificate of Waiver is a reasonable requirement established in good faith to accomplish the Committee's objective of ascertaining the applicant's "good moral character", and the refusal of these applicants to sign makes the Committee's stated purpose to further investigate their moral character a reasonable and indicated additional step in processing their application. The Committee has not placed these applicants in an unreasonable classification. They have set themselves apart by their adamant refusal to sign the waiver. Since applicants have not yet been denied admission, and withholding the result of their examination until the Committee completes its investigation is due to their failure to timely sign the waiver, there is no deprivation of due process.
For the reasons assigned, I am fully satisfied that the majority of this Court properly denied the petition of applicants.