381 So.2d 1203 (1980)
In re Application of Bayani Virata FAYLONA for Admission to the Louisiana Bar.
No. 61475.
Supreme Court of Louisiana.
March 13, 1980.
Concurring Opinion March 14, 1980.
Concurring and Dissenting Opinion March 17, 1980.

ORDER
IT IS ORDERED that Bayani Virata Faylona be admitted to the practice of law in the State of Louisiana.
WATSON, J., concurs and assigns reasons.
DIXON, C. J., assigns concurring reasons.
BLANCHE, J., dissents with written reasons.
MARCUS, J., dissented.
*1204 WATSON, Justice, concurring:
I am concurring for the following reasons:
(1) The applicant was authorized by this Court to take the bar examination prior to my becoming an Associate Justice.
(2) The applicant passed.
(3) The Commissioner appointed by this Court found that applicant's legal education at the University of Manila was substantially equal to that of ABA approved law schools.
(4) The applicant holds, in addition to a law degree from an institution in the Republic of the Philippines (the legal system of which I have personal knowledge and high esteem), a Master of Civil Law from Tulane University.
(5) This application is distinguishable in several particulars from that of Tucker.
(6) I voted to approve the Anderson application where there was prior authorization to take the bar examination and where the facts were similar to, but probably not as strong as, the present application.
(7) In all fairness, I think the Faylona application should be approved.
Therefore, I respectfully concur.
DIXON, Chief Justice, assigns concurring reasons.
This case illustrates a recurring problem not provided for by our rules. A lawyer admitted to practice in a foreign country, educated there, and apparently well qualified, desires to seek admission to the Louisiana Bar and take the bar examination. He may be a resident alien or a citizennatural or naturalized. His application to take the bar examination is denied because he has not graduated from a law school approved by the American Bar Association.
One of my brothers, concurring, takes the position, as I once did, that the literal application of Article 14, § 7(B)(d) would permit that applicant to take the bar examination because he has obtained a graduate law degree from Tulane. That section states that only "a graduate of a law school that is approved by the American Bar Association" may take the bar examination. Since this applicant has a master's degree from Tulane University Law School, he meets the requirements as read literally. Nevertheless, it was not the intention of the rule to permit every person who is able to obtain a graduate degree from a law school (approved by the ABA) to take the bar examination. The rule was obviously intended to provide a standard for legal training. Sometimes programs leading to a graduate degree from an ABA approved law school are open to candidates who do not have an "undergraduate" degree in a law school.
We have been urged to interpret our rules and the articles of incorporation of the Louisiana State Bar Association as if they were statutory material. They are not. When a well qualified applicant is denied the right to take the bar examination, because of a literal interpretation of our rules, we should set about, either to make exceptions in the rare cases, or change the rules in problem areas which are likely to occur. Our rules should not be interpreted as a shield for injustice.
The rules of this court (Rule 14) were not designed to prevent qualified applicants from taking the bar examination and gaining admission to practice law in Louisiana. Their object was to prevent unqualified persons from taking the bar examination.
When the application of our rules results in an injustice, this court has recognized that the injustice should be prevented, and the rules changed. In Application of Cynthia Caroline Dawn Marie Anderson for Admission to the Louisiana Bar, 377 So.2d 1185, 1187 (La.1980), we stated:
". . . We recognize that the practice of granting exceptions can leave a rule without effect. To avoid this result, we suggest that the proper rule-making committee of the Louisiana State Bar Association study whether the rule should be changed and thereafter present the results thereof to this court for our consideration."
As the rule is written, no graduate of a foreign law school would be eligible to take *1205 the bar examination and practice in Louisiana, because the American Bar Association does not investigate, approve or disapprove foreign law schools. We are told that many other states in recent years, although operating under a rule for admission which requires graduation from an ABA approved law school, have accommodated an unexpected influx of well qualified foreign applicants to take the bar examination.[1]
This court governs the admission, as well as the discipline, of lawyers:
". . . The power to prescribe ultimately the qualifications for admission to the bar belongs to the judicial department of the government of the state. . . ." Ex parte Steckler, 179 La. 410, 421, 154 So. 41, 44 (1934).
The bar association itself was formed under the inherent powers of the Supreme Court. Act 54 of 1940 read as follows:
"That the Supreme Court is hereby memorialized to exercise its inherent powers by providing for the organization and regulation of the Louisiana State Bar Association; by providing rules and regulations concerning admissions to the bar, the conduct of the Association and its members . . ."
The rules of this court, of course, can be changed by this court, but the best and most responsive way to provide for the admission of new lawyers to the bar has long been thought to be through the organized bar. Article 14 of the articles of incorporation of the Louisiana State Bar Association is the result, and it should be amended as provided in Article 17.
Until the articles are amended, or until this court enacts a rule, we are relegated, in order to prevent rank injustice, to the expediency of examining the qualifications of every applicant who seeks relief from the committee's denial.
BLANCHE, Justice (dissenting):
I respectfully dissent from permitting relator to be admitted to the Louisiana State Bar Association. This is clearly contrary to the rule set forth in art. 14, § 7(B)(d) of the Articles of Incorporation of the Louisiana State Bar Association, which requires that the relator be a graduate of a law school that is approved by the American Bar Association. This Court has neither the time nor expertise to make a fair determination of educational equivalents, and that matter is best left to American Bar Association approved law schools, who may give a credit of up to two-thirds of the total requirements for the first professional degree.
NOTES
[1] The rules of some states permit graduates of law schools which lack accreditation to sit for the bar examination after completion of post-graduate studies at an accredited law school. For example, the District of Columbia rule requires twenty-four additional credit hours in a law school approved by the ABA, plus the approval of the committee on admissions. The rule in Hawaii is similar, but it applies only to those admitted to practice in another jurisdiction, and additional instruction in bar examination subjects is required. Connecticut requires a Master of Laws degree at an accredited law school, following a bachelor of laws or equivalent degree at an unaccredited school. In Pennsylvania, foreign attorneys must acquire twenty-four credit hours in an accredited law school, sixteen of these in mandatory subjects; but a recent amendment to the rule provides that examiners may admit any member of a foreign bar in good standing. In Florida, graduates of four Cuban law schools may take the bar examination after completing several semesters of study at Florida schools.

Under the rules of other states, a graduate of an unaccredited law school may take the bar examination without further study in an accredited institution, if the unaccredited school meets certain state standards for approval. In some states, e. g., Tennessee, Iowa, Illinois, Maine, Mississippi, the opportunity to prove reasonable equivalence of legal education appears to be available to graduates of all foreign law schools. Alaska limits such proof to graduates of schools teaching the principles of English common law. In Delaware, Oxford and Cambridge receive automatic approval; in California, some Canadian law schools are prima facie deemed accredited, for this purpose.