OSCN Found Document:Question Submitted by: The Honorable Rob Standridge, Oklahoma State Senate, District 15

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 Question Submitted by: The Honorable Rob Standridge, Oklahoma State Senate, District 15
2023 OK AG 11
Decided: 10/12/2023
Oklahoma Attorney General Opinions

Cite as: 2023 OK AG 11, __ __

 
 
¶0 This Office has received your request for an Attorney General Opinion in which you ask, in effect, the following questions:
1. Does requiring health care providers to participate in Oklahoma's Health Information Exchange ("HIE"), as set forth in title 63, section 1-133 of the Oklahoma Statutes, violate article II, section 37 of the Oklahoma Constitution?
2. Can the State of Oklahoma require physicians and other health care providers to contract with Oklahoma's HIE, which is a private entity?
I.
SUMMARY
¶1 This Office concludes that Oklahoma's HIE does not violate article II, section 37 of the Oklahoma Constitution. Article II, section 37 provides, in pertinent part, that "[a] law or rule shall not compel, directly or indirectly, any . . . health care provider to participate in any health care system . . . ." OK CONST. art. II, § 37(B)(1) (emphasis added). Through exemptions afforded under Oklahoma law and an emergency administrative rule, participation in Oklahoma's HIE is voluntary. Accordingly, there is no compulsion to participate in a health care system and therefore no violation of article II, section 37 of the Oklahoma Constitution.
¶2 With respect to your second question, the fact that participation in Oklahoma's HIE is currently voluntary renders your question entirely hypothetical or abstract. "[T]he Attorney General is not required to render opinions on hypothetical or abstract questions," and, in the interest of exercising judicial discretion, in this instance will not. 2006 OK AG 35. To do otherwise is premature.
II.
BACKGROUND
¶3 Article II, section 37 was placed on the November 2010, ballot as State Question 756 after it was passed by a joint resolution of the Oklahoma Legislature (Senate Joint Resolution 59). The people of Oklahoma ultimately approved the state question with 64.73% of the vote, and it went into effect on November 12, 2010.
¶4 Prior to placing State Question 756 on the ballot, the Speaker of the Oklahoma House of Representatives requested that a prior administration of this Office remove the final paragraph of the ballot title. See Letter from Chris Benge, Speaker of the Okla. H.R. to Drew Edmondson, Okla. Att'y Gen. (June 22, 2010) (on file with author). In response, Attorney General Edmondson declined the request, stating that the language in the final paragraph was necessary, in part, because one of the primary purposes of the measure was the State opting out of the Patient Protection and Affordable Care Act ("ACA" or "Obamacare"). See Letter from Drew Edmondson, Okla. Att'y Gen. to Chris Benge, Speaker of the Okla. H.R. (July 7, 2010) (on file with author). Representative Mike Thompson, who co-authored the measure to place the state question on the ballot, said State Question 756 "is the answer to a [sic] Oklahoma citizens about opting out of Obama care." Id. Unequivocally, the message of State Question 756 was "Oklahomans want no part of Obamacare." Opinion, SQ 756: Health Care Opt-Out, OKLAHOMAN (Oct. 17, 2010).
[1]
¶5 Article II, section 37 addresses participation in health care systems, health insurance, and direct payments for health care services. Pertinent to this opinion, section 37 provides that "[a] law or rule shall not compel, directly or indirectly, any . . . health care provider to participate in any health care system." OKLA. CONST. art. II, § 37(B)(1). The term "health care system" is defined as "any public or private entity whose function or purpose is the management of, [or] processing of . . . health care data or health care information for its participants." Id. at (A)(3).
¶6 More than a decade after the passage of State Question 756, two Oklahoma laws--title 56, section 4002.5 and title 63, section 1-133--were enacted relating to the utilization of a state-designated HIE.
[2] Subject to certain exceptions and exemptions, these statutes generally require health care providers to report data to and utilize the state-designated HIE. See 56 O.S.2021, § 4002.5(L); 63 O.S.2021, § 1-133(C). Section 4002.5 is limited to each "participating provider" in the State's managed care Medicaid program, defined as "a provider who has a contract with or is employed by a contracted entity to provide services to Medicaid members . . . ." 56 O.S.2021, § 4002.2(15).[3] Whether any particular health care practitioner chooses to contract with Medicaid or accept employment with a contracted entity is, of course, an individual decision that the practitioner makes voluntarily. Medicaid providers must affirmatively enroll in Medicaid. See Oklahoma Health Care Authority ("OHCA"), https://oklahoma.gov/ohca/providers/provider-enrollment.html (last visited Oct. 11, 2023).
¶7 With respect to the limitations of section 1-133, the Legislature has authorized the OHCA Board to promulgate administrative rules allowing exemptions from the requirements of section 1-133, including "on the basis of financial hardship, size, or technological capability of a health care provider or such other bases as may be provided by rules promulgated by the Board." 63 O.S.2021, § 1-133(C). As will be discussed in greater detail below, OHCA recently promulgated an emergency rule that guarantees an exemption to any provider who does not want to participate in Oklahoma's HIE, regardless of whether the provider is a Medicaid provider who treats members within Oklahoma's managed care program. See OAC 317:30-3-35. As a result of the prohibitions and mandates that appear to exist in article II, section 37, title 63, section 1-133 and title 56, section 4002.5, respectively, this opinion addresses whether the statutory provisions violate those in the constitution. In this Office's opinion, they do not.
III.
DISCUSSION
A. Oklahoma's HIE does not violate article II, section 37 of the Oklahoma Constitution, because participation in Oklahoma's HIE is currently voluntary.
¶8 State law does not require practitioners to participate in the State's HIE, unless they voluntarily enroll as Medicaid providers
[4] or decide not to request a readily granted exemption from title 63, section 1-133(C) of the Oklahoma Statutes under the OHCA Board's newly approved emergency rule. As a practical matter, participation currently is discretionary.
¶9 As detailed above, the requirement to use Oklahoma's HIE is only triggered if a health care practitioner voluntarily elects to enroll in Medicaid. Because section 4002.5 is contingent on a voluntary decision of the practitioner, there is no violation of article II, section 37.
¶10 Turning to section 1-133(C), that law generally requires "all health care providers . . . who are licensed by and located in this state [to] report data to and utilize" Oklahoma's HIE. 63 O.S.2021, § 1-133(C). The statute also allows OHCA to authorize exemptions from participation "on the basis of financial hardship, size, or technological capability . . . or such other bases as may be provided by rules promulgated by" OHCA's Board. Id. The OHCA Board's emergency rule on Oklahoma's HIE was approved by Governor Stitt on August 3, 2023. The rule provides for multiple broad exemptions from the general requirement to report data and utilize the HIE.
¶11 First, the rule flatly exempts health care providers that do not currently own or subscribe to an EHR technology system or service, and it exempts health care providers classified as substance abuse treatment facilities. See OAC 317:30-3-35(d)(2). Then, the rule most significantly provides that any health care provider who registers an exemption with the Office of the State Coordinator for HIE
[5] "shall be granted such exemption and shall not be subject to pay subscription fees and/or connection fees." Id. at (f)(1--2) (emphasis added). Stated otherwise, a blanket exemption from the HIE "shall be granted" to any health care provider who asks for such an exemption. An easily accessible Exemption Registration Form is located on OHCA's website. OHCA, https://forms.office.com/Pages/ResponsePage.aspx?id=ZHgwmpg-CE-CnKLYs8yxaXk5dkedSt GrCkW7oU20nZUQ041SzFZMTZZVFRDUFVCN1NZMVRZS0RCUSQlQCN0PWcu (last visited Oct. 11, 2023). Additionally, an exemption "will automatically renew annually unless the provider withdraws their exemption and elects to participate." OAC 317:30-3-35(f)(3). Such a broad and unconditional exemption process transforms the statutory requirement into something more akin to an election that can be accepted or rejected according to the provider's preferences. Simply put, the State is just not requiring physicians and other health care providers to contract with a private entity[6] for services under the present regulatory system.
B. Judicial discretion requires restraint in answering abstract or hypothetical questions.
¶12 Even though the Attorney General is an executive officer of the State of Oklahoma, OKLA. CONST. art. VI, § 1(A), he or she acts in a quasi-judicial capacity when issuing Attorney General Opinions. See 2015 OK AG 8, ¶ 16 (citing State ex rel. York v. Turpen, 1984 OK 26, ¶ [11], 681 P.2d 763, 767).[7] "One of the requirements . . . [when] acting in a quasi-judicial capacity is to determine if a matter is 'justiciable.'" 2006 OK AG 35. Justiciable matters are "definite, concrete, and capable of a decision granting or denying specific relief of a conclusive nature." Richardson v. State ex rel. Okla. Tax Comm'n, 2017 OK 85, ¶ 5, 406 P.3d 571, 573 (citation omitted). Courts "will not decide abstract or hypothetical questions," id., and this Office may decline to do so as well, in appropriate circumstances. 2006 OK AG 35.
¶13 Presently, because participation in Oklahoma's HIE is voluntary, answering your second question requires engaging in an entirely hypothetical and abstract discussion of a non-justiciable matter. Accordingly, this Office refrains from answering your second question.
[8]
¶14 It is, therefore, the official Opinion of the Attorney General that: 
Because of the broad exemption under the current version of Oklahoma Administrative Code 317:30-3-5, there is no compulsion to participate in a health care system and no violation of article II, section 37. 
GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA
MARIA MAULE
SENIOR ASSISTANT ATTORNEY GENERAL
FOOTNOTES
[1] See also State ex rel. Pruitt v. Sebelius, No. CIV-11-30-RAW, 2013 WL 4052610 at *5 (E.D. Okla. Aug. 12, 2013) (explaining how the effective date "makes clear that the Oklahoma provision was adopted in response to the ACA . . . 'to immunize [Oklahoma] citizens from federal law'") (citation omitted); Attorney General-Elect Ready to Defend Opting Out of Federal Health Care Law, News 9 (Nov. 3, 2010, 6:21 PM), https://www.news9.com/story/5e35b39a83eff40362bee3c8/attorney-generalelect-ready-to-defend-opting-out-of-federal-health-care-law; Leighanne Manwarren, State Question 756 Asks Oklahomans to Opt Out of the Federal Health Care Plan, Okla. Gazette (Oct. 28, 2010), https://www.okgazette.com/news/state-question-756-asks-oklahomans-to-opt-out-of-the-federal-health-care-plan-2948572; Barbara Hoberock, House Veto Override Puts Opt-Out Bill on Ballot, Tulsa World (May 26, 2010), https://tulsaworld.com/news/local/govt-and-politics/house-veto-override-puts-opt-out-bill-on-ballot/article_21e57429-ef12-56a4-8e67-fe9dd97af9a3.html; Julie Bisbee, Oklahoma Senate Backs Public Vote on Federal Health Care Opt Out, Oklahoman (May 6, 2010), https://www.oklahoman.com/story/news/politics/2010/05/06/oklahoma-senate-backs-public-vote-on-federal-health-care-opt-out/61251286007/.
[2] HIE "allows health care professionals and patients to appropriately access and securely share a patient's medical information electronically[,]" to, among other things, "[p]rovide safer, more effective care tailored to patients' unique medical needs." See Office of the National Coordinator for Health Information Technology ("ONC HIT"), https://www.healthit.gov/topic/health-it-and-health-information-exchange-basics/health-information-exchange (last visited Oct. 11, 2023).
After the enactment of the Health Information Technology for Economic and Clinical Health Act ("HITECH"), as part of the American Recovery and Reinvestment Act of 2009, the federal government offered significant financial incentives for health care providers to adopt electronic health records ("EHR") and participate in HIEs, including a 90/10 federal match rate through 2021. Centers for Medicare & Medicaid Services ("CMS"), ONC HIT, Principles and Strategy for Accelerating Health Information Exchange (HIE) (Aug. 7, 2013), https://www.healthit.gov/sites/default/files/acceleratinghieprinciples_strategy.pdf; CMS, Federal Financial Participation for HIT and HIE, https://www.medicaid.gov/medicaid/data-systems/health-information-exchange/federal-financial-participation-for-hit-and-hie/index.html (last visited Oct. 11, 2023).
Health care providers are not currently required to join an HIE as a condition of participation for Medicare or Medicaid, but could well be, in the future. See CMS, ONC HIT, Principles and Strategy for Accelerating Health Information Exchange (HIE) (Aug. 7, 2013), https://www.healthit.gov/sites/default/files/acceleratinghieprinciples _strategy.pdf ("HHS' approach to accelerating HIE among health care providers is expected generally to follow a natural lifecycle of incentives followed by payment adjustments and finally through conditions of participation in Medicare and Medicaid programs as HIE becomes an established enabler of patient-centered care delivery.").
[3] However, not all Medicaid member populations are part of the State's managed care program, including "the aged, blind, and disabled populations," 56 O.S.2021, § 4002.3a(A)(2), and American Indians and Alaska Natives, the latter of which may opt into managed care. 56 O.S.2021, § 4002.3c. As a result, the requirement to submit data through Oklahoma's HIE may not apply to all Medicaid providers, including, for instance, providers who only treat members exempted from the State's managed care program, like gerontologists.
[4] Because it is outside the scope of your question, this opinion will not analyze the effect of title 56, section 4002.5(L) of the Oklahoma Statutes on the OHCA Board's rule, which statute only applies to Medicaid providers within the State's managed care program. However, if the Legislature supports the OHCA Board's rule--which grants an exemption to participation in the State's HIE to any provider who asks for an exemption, regardless of whether the provider is a Medicaid provider within the managed care program--it may want to revisit the language in title 56, section 4002.5(L), either to repeal it or to make explicit that exemptions to participation under title 63, section 1-133(C) equally apply to title 56, section 4002.5(L).
[5] The Office of the State Coordinator for Health Information Exchange is a division of OHCA. See 63 O.S.2021, § 1-132.1.
[6] Although the State "[m]ay temporarily serve as the state-designated entity" as part of a "transition plan," Oklahoma's HIE is a private entity, "whose primary business activity is [HIE] and which is governed by its stakeholders." 63 O.S.2021, § 1-133(A)(2), (B)(3).
[7] The 2015 Opinion references paragraph 9 of Turpen; however, the appropriate reference is to paragraph 11.
[8] uTo the extent the emergency rule is withdrawn or not repromulgated as a permanent rule, or the Legislature otherwise makes participation an absolute requirement, the analysis and answer to each of your questions may change.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Attorney General's Opinions

 
Cite
Name
Level

 
2006 OK AG 35, 
Question Submitted by: The Honorable Mike Reynolds, State Representative, District 91
Discussed at Length

 
2015 OK AG 8, 
Question Submitted by: Chairman Robert H. Gilliland, Workers' Compensation Commission
Cited

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
2017 OK 85, 406 P.3d 571, 
RICHARDSON v. STATE ex rel. OKLAHOMA TAX COMMISSION
Discussed

 
1984 OK 26, 681 P.2d 763, 55 OBJ 1013, 
State ex rel. York v. Turpen
Discussed

Title 56. Poor Persons

 
Cite
Name
Level

 
56 O.S. 4002.2, 
Definitions
Cited

 
56 O.S. 4002.5, 
Administrative Functions - Certificate of Authority - Shared Governance - Requirements
Cited

 
56 O.S. 4002.3a, 
Capitated Contracts for Delivery of Medicaid Services - Request for Proposals - Confirmation from Centers for Medicare and Medicaid Services
Cited

 
56 O.S. 4002.3c, 
Assignment of Medicaid Members to Contracted Entities - Opt-in Enrollment for American Indians and Alaska Natives
Cited

Title 63. Public Health and Safety

 
Cite
Name
Level

 
63 O.S. 1-132, 
Repealed
Cited

 
63 O.S. 1-133, 
State-Designated Health Information Exchange
Discussed at Length